STATE OF HAWAII *v.* JONG SUK CHONG
AND MARTHA PIMENTAL CHONG.

No. 4822.

August 13, 1970.

Richardson, C.J., Marumoto, Abe, Levinson, JJ., and
Hawkins, Circuit Judge, for Kobayashi, J.,
Disqualified.

OPINION OF THE COURT BY RICHARDSON, C.J.

A jury found Jong Suk Chong guilty of possession of heroin, and he was sentenced to imprisonment for a period of not more than ten years. He appeals to this court, claiming violation of his Fourth Amendment rights and errors by the trial court.

The facts of the case are as follows: Shortly before noon on Sunday, January 28, 1968, three police officers assigned to the narcotics detail of the Honolulu Police Department were on regular patrol, with Sergeant John Borges driving. Turning into Kanoa Street from Palama Street, they saw a blue Falcon sedan some distance ahead of them. Sergeant Borges testified, both at the hearing on defendants' motion to suppress evidence and at the trial, that he recognized the sedan as a vehicle often used by Jong Suk Chong and his wife, Martha Pimental Chong, and that both Mr. and Mrs. Chong were known to him as users of narcotics. He explained that this knowledge was based both on Police Department records, which showed among other things that Mr. Chong was a convicted narcotics violator, and on his prior personal observation of both Mr. and Mrs. Chong. He testified that he had previously seen both of them visit locales where known narcotic activity was being carried on, and that he had seen them parked at various places in the City and County of Honolulu administering narcotics to their arms; and that on one particular occasion, while he was investigating another area in the City and County of Honolulu, he had happened upon Mr. Chong and his wife and three other known addicts, and when he got up to the car, he found paraphernalia associated with drug use lying in the road, and he found a piece of a capsule on the side of the car.

At the hearing on defendants' motion to suppress the evidence, Officer Burns also testified that both Mr. and Mrs. Chong were well-known narcotic users.

With this knowledge in mind, the officers slowly drew

alongside of the car where the Chongs were sitting, and looked into the car at them. Officer Burns testified that Mr. Chong was in the middle of the back seat, leaning forward with his arms over the back of the front seat. Mrs. Chong was in the front seat, facing rearward, holding an eyedropper and looking at Mr. Chong. A few seconds after the officers pulled alongside, Mrs. Chong threw the eyedropper out of the car and swallowed something that she had in her hand. This testimony was corroborated by Sergeant Borges. The position and conduct of the defendants, along with the officers' knowledge of their background and reputation of narcotics activity, led them to believe that the Chongs were committing a felony in their presence, and they left their car and arrested Mr. and Mrs. Chong. Officer Burns testified at the motion to suppress that the position of the defendants immediately before the arrest was unusual and suspicious because both were well-known narcotic users; that "right away we knew what was going on, from the appearance, because we know these people as narcotic users."

The officers' experience as narcotics officers aided them in this conclusion. Sergeant Borges testified that he had been on the narcotics detail for three years, that he had participated in about thirty to fifty arrests involving heroin, and that he had witnessed people administering heroin to themselves on at least ten different occasions. He further testified that Mrs. Chong's furtive actions were especially suspicious in light of his knowledge of heroin users. He testified that

> people that use heroin, when they see a police officer, and they feel that they're going to be arrested, they're going to do one of three things. They might swallow the object, they're going to throw the object, or they're going to drop the object and try to hide it.

He further testified, on cross-examination at the hearing

on the motion to suppress, as follows:

A.  ... as I testified earlier, I was only a little bit away from the car, and before I got to Mrs. Chong she swallowed what I felt was heroin.

Q.  What you thought was heroin?

A.  Yes.

Q.  But you don't know for sure?

A.  I don't know for sure, sir, but that's the usual procedure.

On this basis, then, the officers arrested both Mr. and Mrs. Chong, ordered them out of the Falcon and searched it. On the back seat they found a box containing various paraphernalia often used by heroin addicts. On the floor, in the back of the car, on the right-hand side, they found half a gelatin capsule empty, but with some residue adhering to its inner surface. The residue turned out, upon analysis, to be heroin. The eyedropper, found outside the car where Mrs. Chong had thrown it, also was found to have traces of heroin in it. Traces of heroin were also found on a burnt spoon, one of the pieces of equipment found in the box.

At the hearing on defendants' motion to suppress the evidence, and at the trial, the defendants argued that the capsule and the paraphernalia, along with the analysis thereof, were inadmissible as evidence, on the ground that the search of the car and the seizure of these items were accomplished without a warrant, in violation of the defendants' rights under the Fourth Amendment, applicable to the states under the Fourteenth Amendment under *Mapp* v. *Ohio*, 367 U.S. 643 (1961). At the hearing on the motion, the court ruled that the evidence was admissible, holding that the arrest was based upon probable cause and that the ensuing search was valid as incident to the lawful arrest. It based its finding of probable cause upon (1) the known personal background of the defendants as

users of narcotics, and (2) the conduct of Mrs. Chong when the officers pulled alongside the Chongs' car. It felt that, viewed in light of the defendants' past history, the conduct of Mrs. Chong was enough to establish probable cause. The court emphasized that it did not have to make a finding of probable cause to arrest Mr. Chong, because the search was lawful incident to Mrs. Chong's arrest. Since the evidence was thus lawfully obtained, the court held that it could be used against both defendants.

At the trial, the evidence was admitted over defendants' objection. They later moved for a judgment of acquittal, but that motion was denied. The jury returned a verdict of guilty against both defendants. Mr. Chong was sentenced to imprisonment for a period of not more than ten years. Mrs. Chong was released on probation for a period of five years, on condition that she not associate with any known users or sellers of narcotic drugs. Mr. Chong appeals. We affirm his conviction.

## I. *The Motion for Judgment of Acquittal*

The issue presented by this motion is whether there is substantial evidence in the record to support a verdict of guilty beyond a reasonable doubt. *State* v. *Kekaualua,* 50 Haw. 130, 433 P.2d 131 (1967). We find that there was substantial evidence to support the verdict, and we therefore decline to reverse the conviction on this ground.

## II. *The Search and Seizure*

The search and seizure in this case were performed without a search warrant or an arrest warrant. However, a limited warrantless search is permissible incident to an arrest based upon probable cause, as has been most recently recognized in *Chimel* v. *California,* 395 U.S. 752 (1969) and *Chambers* v. *Maroney,* 399 U.S. 42 (1970).

Furthermore, as the court correctly held at the hearing on the motion to suppress the evidence, we need not decide whether there was probable cause to arrest Mr. Chong, if there was probable cause to arrest Mrs. Chong, and the search was justified incident to her arrest.

Whether the evidence in this case was obtained by an illegal search and seizure depends on two factors. First, whether there was probable cause to effect an arrest; and second, given probable cause, whether the scope of the incident search was sufficiently limited to be valid as a warrantless search incident to a lawful arrest. We will consider the two points in that order.

## A. *Probable Cause*

Probable cause exists, as defined in the classic and often followed case of *Brinegar* v. *United States,* 338 U.S. 160, 175-76 (1949),

> where "the facts and circumstances within their [the officers] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll* v. *United States,* 267 U.S. 132, 162.

As was ably pointed out in *People* v. *Scott,* 259 Cal. App. 2d 268 (1968), probable cause is generally based upon a combination of factors, which together form a sort of mosaic, of which any one piece by itself often might not be enough to constitute probable cause, but which, when viewed as a whole, does constitute probable cause.

In this case, the following factors all contributed in some degree to establishing probable cause. (1) Most important of all was the suspicious, furtive conduct of Mrs. Chong when the police officers approached. She was facing Mr. Chong, holding an eyedropper, and when the officers appeared, she threw the eyedropper out of the window and swallowed something that she had in her

hand. (2) Secondarily important is the expertise of the arresting officers. They, and especially Sergeant Borges, had had a great deal of experience in observing narcotics users and were familiar with the methods, paraphernalia, and procedures used by narcotics users, both in administering heroin to themselves and in attempting to dispose of evidence when accosted by police officers. Thus, the position of the Chongs in the car, with Mrs. Chong holding the eyedropper and Mr. Chong extending his arms over the back of the front seat, and the actions of Mrs. Chong referred to above, were of even greater significance to these officers than they would have been to persons less familiar with these matters. (3) Finally, there is the fact of the Chongs' previous reputation as narcotics users, a reputation based primarily upon the personal observations of Sergeant Borges on previous occasions and secondarily upon the officers' knowledge of Mr. Chong's prior conviction for a narcotics violation. While this element, in and of itself, certainly would be insufficient to establish probable cause for an arrest, the great weight of authority is that reputation is entitled to some weight in the determination, because it does give rise to a justifiable inference of narcotics violation when combined with other elements. This is the conclusion reached by the United States Supreme Court in *Carroll* v. *United States*, 267 U.S. 132, 161 (1925), *Brinegar* v. *United States*, 338 U.S. 160, 172 (1949), and *Jones* v. *United States*, 362 U.S. 257, 271 (1960). The same view has also been espoused by many of the highest state courts.[1] In fact, the only view we have found to the contrary is in some isolated language by a divided Supreme Court in *Spinelli* v. *United States*, 393

[1] *See*, for example. Foy v. State, 84 Nev. 76, 436 P.2d 811 (1968) ; State v. Cage. 452 S.W.2d 125 (Mo. 1970) ; Cannon v. State, 235 Md. 133, 200 A.2d 919 (1964). *See also* Note, *The Role of Reputation in Establishing Probable Cause for Arrest and Search*, 1969 Wash. U.L.Q. 339 (1969).

U.S. 410, 414 (1969), which does not seem to have been necessary to the holding in that case and did not discuss the prior Supreme Court cases to the contrary.

In view of these factors, we hold that while prior reputation is entitled to only minimal weight in the determination of probable cause, it is nevertheless entitled to some weight in the determination, and that in this case, all of the combined factors amount to probable cause for the arrest of Mrs. Chong.

B. *The Scope of the Search*

Since there was probable cause for the arrest, the only question that remains for our consideration is whether the search was sufficiently limited to be within constitutional bounds. How widely the police may constitutionally search without a warrant but incident to a lawful arrest is not entirely clear. In *Chimel* v. *California,* 395 U.S. 752 (1969), the United States Supreme Court seemed to circumscribe very closely the permissible area of search. This court followed that rule in severely limiting the allowable area of search in *State* v. *Dias,* 52 Haw. 100, 470 P.2d 510 (1970). However, in cases that involve searches of automobiles stopped on the public highways, the constitutional rule allows a broader scope of search. The Supreme Court's recent holding in *Chambers* v. *Maroney,* 399 U.S. 42 (1970), points out that "as *Carroll, supra,* held, for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars."

In that case, the Court upheld the warrantless search of a station wagon, after it was stopped by police because it fitted the description of a vehicle seen leaving the scene of a gas station holdup. Some of the occupants of the station wagon fitted the description of the robbers. The Court explained that greater latitude was allowed under the Constitution for searches of automobiles on public highways because of their highly mobile nature. It noted that if an

effective search were to be made at all, either the search would have to be made immediately, and without a warrant, or else the car would have to be detained during a period of time sufficient to obtain a warrant. For constitutional purposes, the Court said, it saw no difference between the two alternatives, and either would be reasonable under the Fourth Amendment, given probable cause to search. Thus, the allowable scope of the search extends to the entire vehicle in *Chambers,* just as the actual search did in the case now before us. We think it is clear that the facts before us come within the ambit of this ruling, and therefore that the scope of the search here in question was within constitutional limits. Having already established that probable cause existed for the arrest of Mrs. Chong, we therefore hold that the search and seizure in this case were not in violation of either the Constitution of the United States or the Constitution of the State of Hawaii.

### III. *The Question of Usable Quantity*

On this appeal, defendant contends for the first time that the State must prove he possessed a usable quantity of narcotics if he is to be convicted. However, defendant did not raise this point at the trial. He did not inquire into it on cross-examination of the police chemist; he did not raise it in his argument for judgment of acquittal; he submitted no instruction on it; and he did not object to the instructions given on the matter of possession, which did not mention usable quantity. In fact, no evidence or argument whatsoever was adduced as to what amount of heroin would constitute a usable quantity. We therefore decline to consider this issue.

Affirmed.

*Harry T. Tamura* for defendant-appellant.

*Stanley T. Kanetake,* Deputy Prosecuting Attorney (*Barry Chung,* Prosecuting Attorney, with him on the brief), for plaintiff-appellee.