STATE OF HAWAII, Plaintiff-Appellee, *v.* ROBERT ELLIOTT, Defendant-Appellant

NO. 6069

JANUARY 25, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ.*

*Per Curiam.* The defendant was found guilty by a jury of violating the provisions of HRS § 712-1248(1)(c), promoting a detrimental drug in the second degree. He appeals from the judgment and sentence of the trial court. At issue is whether the trial court erred in denying the defendant's motion to suppress evidence taken from his automobile. The police were armed with a warrant to search his apartment, but they had none for his motor vehicle.

---

* Justices Kobayashi and Kidwell, who heard oral argument in this case, retired from the court on December 29, 1978 and February 28, 1979, respectively. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

Suspecting the defendant of engaging in the drug traffic, and acting upon information acquired from an informant, the Maui police with the active participation of the informant arranged a "controlled" purchase of marijuana from the defendant. At approximately 3:30 p.m. on the appointed day, which was a Saturday, the informant repaired to the defendant's apartment while several members of the vice squad kept the building under surveillance from a discreet distance. Five police officers and a deputy county attorney were involved in the investigation. The police plan essentially was for the informant to purchase the drugs from the defendant, after which he was to give a pre-arranged signal as he left the building, if the sale had proceeded as planned.

Shortly after the informant entered the defendant's apartment, the police saw the defendant emerge from it and walk to his car which was parked in the apartment parking area. From the vehicle he removed a white cloth bag, resembling a 25-lb. rice bag, which he took back with him into the apartment. Shortly thereafter, the informant left the apartment and gave the pre-arranged signal that the sale had been consummated. After he left, the defendant again emerged from his apartment, accompanied this time by two males, Allen and Richard Edwards. The defendant was carrying a white cloth bag similar in appearance to that which he had earlier taken from his car. As the defendant approached his vehicle, Sgt. Tagamori radioed Officer Lee, who had been observing the defendant's movements from his own vehicle, to place him under arrest. As Officer Lee walked towards him, the defendant suddenly became aware of the officer's presence and threw the bag inside the car and locked the door. At that point Officer Lee placed him under arrest. The officer then took the defendant back to his apartment while Officer Baisa stood guard over the defendant's vehicle. The Edwards brothers followed Officer Lee and the defendant back into the apartment. Sgt. Tagamori was waiting for them when they arrived.

Sgt. Tagamori asked the defendant for the keys to his vehicle, but the latter refused. The officer thereupon advised him that they would have no alternative but to force open the

door of the vehicle. Faced with this threat, the female in the apartment, one Michele Monier, produced the keys to the automobile. The sergeant tossed them down to Officer Baisa, who unlocked the car and recovered the white bag. It was found to contain marijuana. The bag could clearly be seen from outside the vehicle, but its outward appearance gave no indication of the nature of its contents. Lt. Cravalho, however, had radioed to his men earlier that according to the informant the marijuana which the defendant sold to him had come from a white bag.

At approximately 5:00 p.m., the police left the premises and drove the defendant and Ms. Monier back to the police station where they were both interrogated. Following the interrogation, Ms. Monier was placed under arrest on other charges unconnected with the incidents in this case. Neither of the Edwards brothers was arrested or charged. Prior to and at trial, the defendant moved to suppress the contraband seized from his automobile.

The issue in this case is, whether the white cloth bag and the contraband which it contained were lawfully seized by the police acting without a search warrant.

While it has been recognized that an automobile, because of its mobility, may be treated less stringently than a private residence for Fourth Amendment purposes,[1] *Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *Chambers v. Maroney*, 399 U.S. 42 (1970); *Carroll v. United States*, 267 U.S. 132 (1925), a search and seizure involving a motor vehicle is still subject to the warrant requirement. *Id.* An automobile search without a warrant, however, would not be constitutionally proscribed where the search is conducted as an incident to a proper arrest,[2] *State v. Chong*, 52 Haw. 226, 473 P.2d 567 (1970); *cf.*

---

[1] "Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office." Dyke v. Taylor Implement Co., 391 U.S. 216, 221 (1968).

[2] While the defendant was arrested next to his vehicle, the search and seizure in this case was not accomplished until after he had been returned to his apartment. Thus, the warrantless search and seizure in this case may not be upheld as a search incident to a lawful arrest. Chambers v. Maroney, supra; Preston v. United States, 376 U.S. 364 (1964); Chimel v. California, supra. Compare, State v. Chong, supra.

*Chimel v. California,* 395 U.S. 752 (1969), or, assuming the existence of probable cause, where exigent circumstances are present. *Coolidge v. New Hampshire, supra; Chambers v. Maroney, supra; Carroll v. United States, supra.* Accordingly, the Supreme Court has held that a search warrant is not required where there is probable cause to search an automobile stopped on the highway; and the car is movable, the occupants are alerted, and the car's contents may be subject to removal or destruction before a warrant can be obtained. *Carroll v. United States, supra.*

Exigent circumstances were also found to exist where the accused and his accomplices, after robbing a bank, were stopped and arrested by the police as they were fleeing from the scene of the crime. Instead of searching the car on the spot, the officers had it driven to the police station where it was searched without a warrant. The Court upheld the warrantless search. *Chambers v. Maroney, supra.* But in another case where the police had known of the probable role of the automobile in the crime; the defendant had been aware that he was under police investigation and had had ample opportunity to destroy any evidence connected with the crime; he was under arrest at the time of the warrantless search; the vehicle was parked in a private driveway where it was not likely to attract undue attention; the search did not involve contraband, stolen goods, or weapons; and there were no known confederates likely to remove the evidence, the Court found the warrantless search of the automobile to be constitutionally proscribed. *Coolidge v. New Hampshire, supra.* In that case the Court also observed:

> "The police had ample opportunity to obtain a valid warrant; they knew the automobile's exact description and location well in advance; they intended to seize it when they came upon [the defendant's] property. And this is not a case involving contraband or stolen goods or objects dangerous in themselves." 403 U.S. at 472.

The "automobile exception" to the warrant requirement first carved out by *Carroll,* and considered in *Chambers* and *Coolidge,* has been the focus of much appellate litigation over the years, and what has become obvious is that the term

"exigent circumstances" is incapable of precise definition, *United States v. McClain*, 531 F.2d 431 (9th Cir. 1976), and that each case must be decided on its own facts. At the very least, however, there must be a showing that at the time of the warrantless search and seizure there was probable cause to search; and that the police had reason to believe that because of the car's mobility or exposure, there was a foreseeable risk that it might be moved or that the evidence which it contained might be removed or destroyed before a warrant could be obtained. *United States v. Connolly*, 479 F.2d 930 (9th Cir. 1973), *cert. denied* 414 U.S. 897.

In *Connolly*, federal agents, with the aid of an informant, arranged to purchase drugs from the defendant. The first sale was consummated at the defendant's house. After negotiating with him for a second purchase, the officers obtained a warrant to search his house. This search apparently was timed to take place following the second sale. Agents that evening were deployed to keep the defendant's house under surveillance. The defendant appeared at his house after midnight, and the officers thereafter saw him drive to another house from which he later emerged with a paper bag. They then saw him enter his car and drive back to his own house. Agents waiting there arrested him as soon as he returned, parked, and left his automobile, but not before he had shut the door and stepped away from the vehicle. The officers immediately entered the car and from under the front seat found a paper bag containing contraband. The court upheld the warrantless search and seizure on the basis of exigent circumstances. Of dispositive significance to the court was the fact that a likely confederate of the defendant was still at large. There was evidence that the defendant was overheard telling someone at the other location that he would be back in 20 minutes. The court observed:

> "*Coolidge* forbids such intrusions if founded merely on a generalized fear that an unknown person will move the vehicle or destroy evidence in it; but where the police have and can articulate specific grounds for believing that a known accomplice, acquaintance, or, in unusual cases . . . an unknown person passing by is likely to move the

vehicle or destroy evidence within it before a warrant could be secured, a warrantless probable-cause search is permissible. Under *Chambers*, the police are not required to post a guard around the car in such circumstances." 479 F.2d at 935.

*See also United States v. McClain, supra; United States v. Gaudin*, 492 F.2d 132 (5th Cir. 1974), *cert. denied*, 420 U.S. 910; *United States v. Evans*, 481 F.2d 990 (9th Cir. 1973).

Similarly, in the circumstances of this case, we find the requisite exigency for the warrantless seizure of the bag and its contents. Here we are dealing with contraband, and not mere evidence, and there was clear probable cause for police belief that the white bag did in fact contain contraband; the police had no prior inkling of the presence of the defendant's automobile or that it would in any way be involved in the transaction; the bag was plainly visible from outside of the vehicle; the activity of the defendant and the police concerning the bag had focused public attention upon it; and the automobile was parked in an open apartment parking area adjacent to a public street and was readily accessible to tenants and others, including those who might have had more than a passing interest in the vehicle and its contents. Certainly, Ms. Monier, who shared the apartment with the defendant, and the two Edwards brothers would have had the necessary motivation to tamper with the vehicle and the contraband which they must have known, or at the very least suspected, was contained in the white bag.

In determining whether the circumstances were such as to justify a warrantless search of the automobile, the material circumstances to be considered are those which obtained at the time of the search. And while the defendant was under arrest at the time, his likely confederates, Ms. Monier and the Edwards brothers, were not.[3] Moreover, there were up to 30

---

[3] Ms. Monier was not arrested at the scene. The police apparently did not have sufficient grounds to take her into custody. Although she was asked to accompany the police back to the station when they left, she was never charged in connection with the incidents in this case. Whether the requisite circumstances existed at the time of the search is not to be determined by hindsight. United States v. Sherman, 430 F.2d 1402 (9th Cir. 1970). Moreover, the Edwards brothers were never arrested or charged, and they continued to remain at large after the police left the premises.

units in the apartment complex, all of which either fronted upon or overlooked the parking area, and it is highly unlikely that none of the occupants was aware of what was taking place on the premises. Although the car itself was locked, the police had no assurance that if the vehicle was left unattended, persons not in custody would not be able to gain access to it or to the contraband which it contained. Thus, the police believed, and we think reasonably, that they had no alternative but to search the car on the spot.[4] Of course, they might have impounded the vehicle or posted guards around it while they applied for a warrant, but for constitutional purposes there is "little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." *Chambers v. Maroney, supra,* at 52. Probable cause to search and exigent circumstances must be present in either case, and where both coincide the police may either search the vehicle immediately without a warrant or seize and hold it for whatever period is necessary to obtain a warrant for the search. *Id. United States v. Connolly, supra; United States v. McClain,* 531 F.2d 431 (9th Cir. 1976).

Affirmed.

*Andrew S. Hartnett* for defendant-appellant.

*James B. Takayesu,* Deputy Prosecuting Attorney for plaintiff-appellee.

---

[4] The defendant suggests that one of the officers could have kept the car under visual surveillance while the others attempted to obtain a warrant. This, however, would not have been a meaningful alternative in this case. Short of impounding the vehicle or posting a guard around the vehicle, there was no assurance that access to the vehicle or its contents could be effectively forestalled. Moreover, a special police detail would have been required to maintain the surveillance, compare Coolidge v. New Hampshire, supra, and the fact that the incidents in question took place on a weekend when governmental offices are generally closed might have added to the time constraints faced by the police. In a somewhat different factual context, the Supreme Court has observed that "[f]ollowing the car until a warrant can be obtained seems an impracticable alternative since, among other things, the car may be taken out of the jurisdiction. Tracing the car and searching it hours or days later would of course permit instruments or fruits of crime to be removed from the car before the search." Chambers v. Maroney, supra, at 51, n. 9.