STATE OF HAWAII, Plaintiff-Appellee, *v.* ROBERT HOWARD BENNETT, Defendant-Appellant, and BRANDON P. PARKER, Defendant

NO. 6263

APRIL 29, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ., RETIRED JUSTICE KOBAYASHI AND CIRCUIT JUDGE LUM, ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* Appellant Robert Howard Bennett appeals from a jury conviction for burglary in the first degree.[1] We affirm.

At about 4:00 a.m. on June 2, 1975, John Grimes suddenly awoke to find two male strangers searching his belongings on top of a television in the living room of his apartment; he yelled and both fled; he gave chase but lost both outside of his apartment.

Grimes immediately returned to his apartment and phoned the police, reporting the incident and giving a description of the two male persons.

An all-points bulletin of the burglary and the descriptions of the suspects were immediately broadcasted to police vehicles near the vicinity of the burglary. Within minutes of the broadcast, Officer Teller was a block away from Grimes' apartment. Teller saw two male persons appearing to match the descriptions given in a white Pontiac heading in a direction away from the apartment.

Teller immediately radioed Officer Harada, who was in another vehicle, to stop the suspects. Harada had also heard the all-points bulletin and descriptions earlier. A few seconds after Teller's message, Harada observed the white Pontiac go by. He gave chase and stopped the Pontiac on Leowahine Street, a public street, near an apartment complex, approximately a mile away from Grimes' apartment.

In the meantime, Teller had proceeded to the apartment to conduct an interview of Grimes.

After receiving Harada's radio message that the suspects were in custody, Teller drove Grimes to the place of apprehension to see if Grimes could identify the two suspects —

---

[1] HRS § 708-810(1)(c), as amended.

one was Brandon Parker, a Black person, and the other was appellant, a White person. The suspects were standing outside of their car in a well-lit area next to a shopping center parking lot. Teller drove to within twenty feet of them. Since Grimes had seen Parker's face during the burglary, he was able to positively identify Parker by face; but because he had not seen appellant's face at all, he was unable to identify him by face. He was able, however, to identify appellant by his physical characteristics and by his clothing.

Both persons were then arrested. The time period that elapsed between the burglary and the arrest was less than twenty minutes.

Immediately after their arrest, the police conducted an on-the-spot warrantless search of the car. From the floor of the back seat, a wine jug containing coins was seized and from the trunk a stereo set, a clock, and a tape recorder were seized.[2]

Appellant stood trial alone because Parker had fled the jurisdiction.

## I. STOPPING OF THE AUTOMOBILE BY THE POLICE AND THE SUBSEQUENT ORDER-OUT AND FRISK

Appellant complains that his constitutional rights[3] were violated when Harada stopped appellant's vehicle and he was ordered out and frisked; since the action of the police was unconstitutional, the evidence seized as a result of these unconstitutional acts should have been suppressed.[4] *Wong Sun v. United States*, 371 U.S. 471 (1963).

---

[2] None of the articles found in the trunk was actually removed. Only the serial number of the stereo set was recorded by the police. During trial the court permitted testimony about these articles over objection.

[3] Fourth Amendment, U. S. Const. and Art. I, Sec. 5, Hawaii State Constitution.

[4] A motion to suppress was heard before trial and denied. At trial, the motion was again renewed and denied.

Initially, we conclude that appellant and Parker were "seized" by the police when their automobile was stopped. *Terry v. Ohio*, 392 U.S. 1 (1968); *State v. Goudy*, 52 Haw. 497, 479 P.2d 800 (1971); *State v. Joao*, 55 Haw. 601, 525 P.2d 580 (1974); *State v. Ogata*, 58 Haw. 514, 572 P.2d 1222 (1977). We now examine whether the "seizure" was done within the guidelines of constitutional validity.[5] *Terry v. Ohio, supra; Sibron v. New York*, 392 U.S. 40 (1968); and *Adams v. Williams*, 407 U.S. 143 (1972); *State v. Joao, supra,* and *State v. Onishi*, 53 Haw. 593, 499 P.2d 657 (1972).

Following the doctrine laid out by *Terry*, we held in *Onishi, Joao, State v. Powell*, 61 Haw. 316, 603 P.2d 143 (1979) and *State v. Kea*, 61 Haw. 566, 606 P.2d 1329 (1980), that in order for a police officer to conduct a valid stop and frisk, he must have observed specific conduct on the part of the person whom he is about to stop and frisk, or have reliable information from which he may reasonably infer that criminal activity is afoot and that the person being frisked is armed and dangerous. And the test of whether the officer's conduct of intrusion was reasonable is to be determined by whether the facts known to the officer, judged against an objective standard, would warrant a man of reasonable caution to believe that the action taken was appropriate.

In determining the reasonableness of the officer's conduct, the information which he has on hand is vital, but he is not limited to his own personal knowledge. Where police officers are acting in concert and are keeping each other informed of the progress of a particular investigation, the knowledge of each is deemed the knowledge of all. *State v. Barnes*, 58 Haw. 333, 336, 568 P.2d 1207, 1210 (1977). Also, what is reasonable depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

---

[5] Appellant argues that a probable-cause guideline should be adopted. This court has consistently in the past rejected the probable-cause argument and applied the guidelines of *Terry*.

Both Harada and Teller in separate vehicles heard the broadcast and the description given. The suspects were reported to be two males, one a Black and the other a White. The White was "approximately 6 feet to 6 feet two inches," "150 to 170 pounds," wearing a "dark green tee shirt," and "a dark jungle fatigue pants." He had a "military haircut" and his hair was of "brown color." The Black was possibly "six feet," "160 to 170 pounds," with "jungle fatigue shirt and trousers" and "Afro hair cut." Both were also reported to be wearing military combat boots.

As both officers headed toward the scene of the crime, Teller was the first to be attracted by the white Pontiac, which was travelling in a direction away from the victim's apartment and was a block away. Teller noticed that the driver was Black, wearing fatigue uniform, and the passenger was White, wearing a tee shirt.

Teller immediately radioed his observation to Harada in the back of him and requested Harada to stop the car. When Harada saw the car within four seconds later, he also noticed that the occupants were two male persons. He could see the driver clearly — a Black, wearing an army fatigue shirt. He could not see the passenger clearly, but Harada could tell he had dark-colored hair and Harada could also tell he wasn't a Black male. Harada immediately gave chase and turned on his blue flashing light. The car attempted to get away.[6] Harada finally turned on his siren and stopped the car a little more than a quarter of a mile away.

The observations of Teller and Harada formed the basis for a reasonable person to conclude that the suspects had been involved in the criminal activity. Their observations were made within minutes of the crime and within a block of the alleged burglary at a time when there was hardly any traffic on the highway. While the suspects were last seen by Grimes fleeing on foot, it was reasonable to assume that they would be making their getaway by automobile. The auto-

---

[6] Officer Harada had testified during trial that the car "was attempting to make a getaway."

mobile was heading in a direction away from Grimes' apartment. The suspects generally matched the description given. The car attempted to get away from Harada.

We hold that the investigatory stop of the car was not based on inarticulate hunches as argued by appellant, but instead was reasonably justified based on the officers' observation and information on hand.

We also hold that the circumstances which formed the reasonable basis for the stop of the car justified the order-out and frisk and, as part of such frisk, scanning the interior of the car with a flashlight.[7]

Furthermore, there was added justification when one considers the seriousness of the nature of the offense,[8] that it was dark, that Parker refused to comply with an order to place both hands on the dash board, but kept one hand "fiddling around" under the dash board,[9] and there was reasonable apprehension for Harada's safety. *See Pennsylvania v. Mimms,* 434 U.S. 106 (1977).

## II. THE WARRANTLESS SEARCH OF THE AUTOMOBILE AND SEIZURE OF THE FOUR ARTICLES

Appellant, having failed in his argument that his constitutional rights were violated when his automobile was stopped and he was ordered out and frisked, argues further that his

---

[7] Appellant argues that this conduct by the police was likewise constitutionally impermissive. We do not see any merit to this argument. State v. Hanawahine, 50 Haw. 461, 443 P.2d 149 (1968).

[8] *See* Sibron v. New York, *supra*, at 74, Harlan, J.'s concurring opinion; *also see* State v. Freitas, 61 Haw. 262, 602 P.2d 914 (1979), wherein this court stated:

> While the offense of burglary in the first degree . . . may be committed in a nonviolent manner, particularly where only property rights are involved, it does not necessarily follow that the individual charged . . . was not armed, or that he was not capable and prepared to inflict bodily harm. . . . The potential for violence is ever present in this type of situation.

[9] A knife was later discovered under the dash board.

same constitutional rights[10] were nevertheless violated by the police when a warrantless search of the automobile was conducted by the police, and since all four articles were illegally seized, they should have been suppressed by the trial court.[11]

We are again requested to deal with the automobile exception to the warrant requirement. In two recent decisions, *State v. Elliott*, 61 Haw. 492, 605 P.2d 930 (1980) and *State v. Powell*, 61 Haw. 316, 603 P.2d 143 (1979), we discussed the automobile exception so we need not repeat such discussion here.

In view of *Elliott* and *Powell*, we hold that, in the case at bar, there were exigent circumstances for the police to conduct the warrantless search of the automobile. The automobile was parked on a public highway, near an apartment complex, and adjacent to a shopping center parking lot. The police had reason to be concerned with the security of any contraband that could have been in the vehicle.[12]

Appellant persists in his argument that the police should have secured the car after its seizure and complied with the warrant requirement thereafter.

The language of *Elliott* is dispositive:

> . . . Of course, they (police) might have impounded the vehicle or posted guards around it (car) while they applied for a warrant, but for constitutional purposes there is "little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." (Citation omitted.)

Having resolved the issue as to the warrantless search of the car, we now reach the issue of whether it was constitutionally permissible for the police to seize the four articles found in the car. These items were not stolen from Grimes'

---

[10] *See* note 3 *supra*.

[11] *See* note 2 *supra*.

[12] The fact that the wallet was later found near the apartment does not illegitimize the conduct of the police.

apartment but were actually stolen from a neighbor's apartment.

If, in the course of a lawful search, the police inadvertently discovered evidence of a crime other than that for which the arrest was made, the police may seize it and use it as evidence against the arrestee. *State v. Kaluna,* 55 Haw. 361, 367, 520 P.2d 51, 55 (1974); *State v. Park,* 50 Haw. 275, 276, 439 P.2d 212, 213 (1968). The police may legally seize any evidence of a crime in "open view" so long as the searching officer is in a lawful position to conduct such search. *Coolidge v. New Hampshire,* 403 U.S. 443, 461 (1971); *State v. Powell, supra; State v. Hook,* 60 Haw. 197, 587 P.2d 1224 (1978); *State v. Davenport,* 55 Haw. 90, 516 P.2d 65 (1973).

Having ruled that the police was lawfully authorized to conduct the automobile search, we hold that the police was justified in seizing all four articles which were visible and in "open view." Therefore, the wine jug and the oral testimony[13] concerning the other articles were admissible into evidence and the motion to suppress was properly denied.[14]

## III. IDENTIFICATION ON A ONE-TO-ONE SHOW UP

The pre-identification of appellant by Grimes on a one-to-one show up raises issues under *United States v. Wade*[15] and *Stovall v. Denno.*[16]

In *Wade,* the court pointed out the inherent dangers and unfairness in confrontations for identification.

In *Stovall,* the court held that the practice of showing

---

[13] The constitutional protection against an illegal search and seizure extends to oral testimony as well. State v. Evans, 45 Haw. 622, 372 P.2d 365 (1962).

[14] Motions to suppress were made before and during trial to suppress the wine jug and all oral testimony concerning the four articles found in the car.

[15] 388 U.S. 218 (1967).

[16] 388 U.S. 293 (1967).

suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned.

There is always the ever present danger that an eye witness traumatized by the experience of a recent crime is likely to look upon a suspect caught by the police and in its custody differently in a one-to-one show up than in a lineup, and that such eye witness may be the victim of unconscious or overt pressures. But, recognizing the mysteries of perceptions and recognitions, we believe that prompt confrontations under proper circumstances will provide fairness by assuring reliability and expeditious release of innocent suspects.

The question we face is whether the procedure used in the pre-trial identification of appellant was so unnecessarily suggestive and conducive to irreparable mistaken identification that appellant was denied due process. Whether due process violation exists depends on the totality of circumstances surrounding the identification.

In *State v. Padilla*, 57 Haw. 150, 552 P.2d 357 (1976), we adopted the factors of *Neil v. Biggers*, 409 U.S. 188 (1972) to determine whether under "the totality of circumstances," the identification was reliable even though the confrontation procedure was suggestive. These factors were: The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the time of the crime and confrontation.

We note again that appellant was not identified by Grimes by face; he was identified by his clothing and physical characteristics. Parker was, however, positively identified by face, by his physical characteristics, and by the clothing he was wearing.[17]

---

[17] It is for this reason that we dismissed appellant's argument that the State failed to prove beyond a reasonable doubt that appellant committed the burglary as being without merit. The jury was entitled to consider the totality of circumstances and to make reasonable inferences from the surrounding facts to reach the conclusion that appellant was the other person besides Parker involved in the crime. State v. Murphy, 59 Haw. 1, 575 P.2d 448 (1978).

Although Grimes had only a few moments to view the suspects before they fled, he was able to see Parker's face. Grimes testified that the light from the outside of his apartment was "very bright," which enabled him to see Parker's face clearly and to unequivocably identify Parker; he was able to see what the suspects were wearing and to note their physical characteristics; his report to the police on their description was substantially accurate; and there was no undue coercion or prejudicial remarks made by the police to influence Grimes in his identification. The show-up identification was held within 15-20 minutes of the crime when Grimes' "mind's eye" was fresh and vivid; both suspects were not handcuffed; and the presence of four policemen at the scene was not unnecessarily suggestive.

We hold that the one-to-one show-up procedure did not give rise to a substantial likelihood of misidentification and did not deny appellant due process of law.

## IV. ADMISSIBILITY OF PARKER'S STATEMENT TO THE POLICE

During trial, the court admitted into evidence the testimonies of Mr. and Mrs. Olsen. They testified that the four articles seized by the police during its search of appellant's car were stolen from their apartment and belonged to them.

Appellant, in his defense, attempted to introduce into evidence a statement made by Parker to Detective Arnold Takakawa in which Parker claimed ownership of the articles when Takakawa was investigating Parker's involvement in the prior unrelated burglary. The trial court excluded the statement.

Appellant claims that the trial court should have allowed into evidence the hearsay statement of Parker because it was a statement against penal interest.

In *State v. Leong*, 51 Haw. 581, 465 P.2d 560 (1970), we held that:

[a] declaration against interest is a well-recognized exception to the hearsay rule. The requirements for this exception are that the declarant be unavailable; that he

had knowledge of the facts concerning the declaration; that it was a declaration against his interest; and that there was no motive to falsify. (Citations omitted.) The rationale for the admission of a declaration against interest is that the declaration is trustworthy and unlikely to be false because one will not make false statements against his interest. (Citations omitted.)

Parker's declaration did not meet the requirement as a statement against penal interest. Because he was under investigation of the prior burglary, he had every motive to falsely claim ownership of the articles. The trial court did not commit error in refusing Parker's hearsay statement.

Other issues raised on appeal are without merit.

Affirmed.

*Renee M. L. Yuen (Shelton G. W. Jim On* with her on the briefs), Deputy Public Defenders, for defendant-appellant.

*Peter Carlisle (Paul H. Toyozaki* on the brief), Deputy Prosecuting Attorneys, for plaintiff-appellee.