**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000816
28-JUN-2021
09:23 AM
Dkt. 53 MO**

NOS. CAAP-19-0000816 AND CAAP-19-0000840

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellant,
v.
LAURIE A. DARGIS, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1CPC-19-0000056)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Wadsworth, JJ.)

In this consolidated appeal, Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the "Findings of Fact and Conclusions of Law and Order Granting Defendant's Second Motion to Suppress Evidence" (**Order Granting Motion to Suppress**) entered on October 23, 2019,[1] by the Circuit Court of the First Circuit (**Circuit Court**).[2]

On January 11, 2019, the State charged Defendant-Appellee Laurie A. Dargis (**Dargis**) by Complaint with: Promoting a Dangerous Drug in the Third Degree in violation of Hawaii Revised

---

[1] The Circuit Court filed an identical Order Granting Motion to Suppress on November 7, 2019 which the State appealed in CAAP-19-0000840. This court consolidated the appeals under CAAP-19-0000816.

[2] The Honorable Trish K. Morikawa presided.

Statutes (**HRS**) § 712-1243 (2014)[3] (**Count I**), and Promoting a Detrimental Drug in the Third Degree in violation of HRS § 712-1249 (2014)[4] (**Count II**).[5]

On appeal, the State contends the Circuit Court erred: (1) by suppressing the "ice pipe" found in open view and the container of marijuana found in plain view in Dargis's vehicle because the seizure of that evidence did not require a search warrant, and even if it did, that evidence would have been inevitably seized pursuant to a valid warrant; and (2) in its Conclusions of Law (**COL**) 4, COL 5, COL 10, COL 11, and COL 12.

For the reasons discussed below, we affirm the Circuit Court's Order Granting Motion to Suppress.

## I.  Background

On May 28, 2019, Dargis filed a Motion to Suppress Evidence (**First Motion to Suppress**) arguing that there had been a lack of reasonable suspicion for the stop of her vehicle.  On June 28, 2019, Honolulu Police Department Officer Jarrett Atkins (**Officer Atkins**) testified at the hearing on Dargis's First Motion to Suppress, after which the Circuit Court denied the motion, finding there was reasonable suspicion for the stop of the vehicle.

On August 5, 2019, Dargis filed a Second Motion to Suppress Evidence (**Second Motion to Suppress**).  In her memorandum

---

[3]  HRS § 712-1243 provides, in relevant part:

> **Promoting a dangerous drug in the third degree**.  (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.

[4]  HRS § 712-1249 provides, in relevant part:

> **Promoting a detrimental drug in the third degree**.  (1) A person commits the offense of promoting a detrimental drug in the third degree if the person knowingly possesses any marijuana or any Schedule V substance in any amount.

[5]  Dargis's co-defendant Gerry K. Kawaguchi (**Kawaguchi**), who is not a party in this appeal, was charged with Promoting a Dangerous Drug in the First Degree in violation of HRS § 712-1241(1)(a)(i) (**Count III**).

in support of her Second Motion to Suppress, Dargis argued, *inter alia*, that Officer Atkins illegally searched her vehicle without first obtaining a warrant because there were no exigent circumstances to justify the warrantless search.  The parties stipulated to the June 28, 2019 testimony by Officer Atkins and no witnesses testified at the hearing on Dargis's Second Motion to Suppress.

After a hearing on September 18, 2019, the Circuit Court entered its Order Granting Motion to Suppress, in which it held there were no exigent circumstances and a search warrant was required to seize the evidence from Dargis's vehicle.  The Circuit Court thus suppressed the evidence.  The Circuit Court's findings of fact in its Order Granting Motion to Suppress are not challenged and are therefore binding on appeal.  Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 458, 40 P.3d 73, 81 (2002).  The unchallenged findings state in pertinent part:

> 8. The following information was provided by Officer Atkins in his previous testimony on June 28, 2019:
>
>> a. On January 6, 2019, at approximately 3:[5]4 a.m.,[6] Officer Atkins was on duty and on patrol in his marked blue and white vehicle traveling on Kamehameha Highway.
>>
>> b. While on patrol, Officer Atkins noticed a vehicle parked along the area of 56-565 Kamehameha Highway and approached the vehicle.
>>
>> c. When Officer Atkins was approximately 15 feet away from the vehicle he noticed that the vehicle was a green Honda that he had observed a few days prior at Kahana Bay.
>>
>> d. Officer Atkins related that a few days prior while he had been transporting a prisoner to the Kaneohe Police Station, Officer Atkins had observed a green Honda parked at Kahana Bay. Per Officer Atkins there were a number of abandoned cars in the area of Kahana Bay. Officer Atkins was familiar with Defendant Dargis and observed her next to the green Honda. Officer Atkins slowed down and ran the license plate of the green Honda. Officer Atkins learned that the green Honda had an expired safety check and vehicle tax.

---

[6]  The Circuit Court's findings incorrectly state the time was approximately 3:24 a.m., which the parties concede is a typographical error.

e. On January 6, 2019, after Officer Atkins realized that the green Honda was the same that he had seen and run the plate a few days prior, Officer Atkins pulled his vehicle to a stop approximately 10 feet from the green Honda. Officer Atkins car was parked facing the front of the green Honda. Officer Atkins headlights were on as his car approached the green Honda and his headlights remained on and were facing the driver's door area when he parked his vehicle.

f. Prior to getting out of his vehicle, Office Atkins confirmed that the green Honda had expired vehicle tax and safety. Officer Atkins then got out of his car and approached the green Honda. As he approached the green Honda, Officer Atkins observed Defendant Dargis in the driver seat of the vehicle ignite a lighter with her right hand and put the lighter to the bulbous end of a glass pipe that was pressed to her lips and in her left hand. Officer Atkins further observed white residue in the pipe and smoke emit from the bulbous end of the pipe.

g. Upon becoming aware of Officer Atkins, Defendant Dargis dropped the pipe to the floor of the vehicle.

h. Officer Atkins reached the door of the vehicle and order [sic] Defendant Dargis out of the vehicle. He took Defendant Dargis to the rear of the vehicle and arrested her for Promoting a Dangerous Drug in the Third Degree.

i. After Defendant Dargis exited the vehicle, Officer Atkins observed the pipe on the floor of the vehicle where Defendant Dargis's feet had been in the vehicle.

j. Officer Atkins then ordered the passenger, co-Defendant Gerry Kawaguchi, out of the vehicle.

k. After the defendants were out of the vehicle, Officer Atkins retrieved the pipe that he had observed Defendant Dargis drop onto the floor of the vehicle.

l. As he was retrieving the pipe, Officer Atkins observed and recovered two other items from the floor of the vehicle: a clear glass tube with a broken bulbous end and a jar that contained a green leafy substance which Officer Atkins identified as marijuana.

## II.  Standard of Review

We review the circuit court's ruling on a motion to suppress de novo to determine whether the ruling was right or wrong. The circuit court's conclusions of law underlying its ruling on a motion to suppress are also reviewed de novo under the right/wrong standard. Under the right/wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it.

State v. Vinuya, 96 Hawaiʻi 472, 480, 32 P.3d 116, 124 (App. 2001) (quotation marks and citations omitted).

> However, findings of fact are reviewed under
> the clearly erroneous standard, and will not be set aside on appeal unless they are determined to be clearly erroneous. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.

Id. at 480-81, 32 P.3d at 124-25 (quotation marks and citations omitted) (format altered).

### III.  Discussion

### A.  Warrant Requirement and Legally Recognized Exceptions

The United States Supreme Court and the Hawaiʻi Supreme Court have recognized that although an automobile, because of its mobility, may be treated less stringently than a private residence for Fourth Amendment purposes, a search and seizure involving a motor vehicle is still subject to the warrant requirement. State v. Elliott, 61 Haw. 492, 494, 605 P.2d 930, 932 (1980) (citing Coolidge v. New Hampshire, 403 U.S. 443 (1971)).  Further, it is well established that any warrantless search of a constitutionally protected area, such as an automobile, is presumptively unreasonable unless there is both probable cause and a legally recognized exception to the warrant requirement. State v. Jenkins, 93 Hawaiʻi 87, 102, 997 P.2d 13, 28 (2000).

There is no dispute that probable cause was present in this case.  The dispute in this case centers on whether a search warrant for the Honda was required before the subject items were seized from the vehicle.  In support of its contention that a warrant was not required, the State relies on State v. Chong, 52 Haw. 226, 473 P.2d 567 (1970) and argues that the facts in Chong and this case are similar.  Specifically, the State argues that in Chong, the police knew that the defendants had a reputation for being narcotic users.  52 Haw. at 228, 473 P.2d at 569.  The police spotted the defendants and when they pulled up alongside the defendants' vehicle, Mrs. Chong was holding an eyedropper.

5

<u>Id.</u>  A few seconds later, Mrs. Chong threw the eyedropper out of the vehicle and swallowed something she had in her hand.  <u>Id.</u> The police then arrested the defendants, searched the vehicle, and found heroin and drug paraphernalia.  <u>Id.</u> at 229, 473 P.2d at 570.  The exception to the warrant requirement articulated in <u>Chong</u> was that a limited warrantless search is constitutionally permissible <u>incident to an arrest based upon probable cause</u>.[7] <u>Id.</u> (emphasis added).

In this case, the State did not assert the warrant exception that is articulated in <u>Chong</u>.  Instead, in its opposition to Dargis's Second Motion to Suppress, the State argued that the police action was justified at its inception (apparently referring to Officer Atkins' investigation of Dargis's vehicle on the side of the road), and that "the search was reasonably related in scope to the circumstances that justified the interference in the first place."  The State's opposition then appears to make an argument based on Officer Atkins seeing Dargis in the vehicle with drug paraphernalia and making confusing references to both "open view" and "plain view" without distinguishing between the two.[8]  Similarly, at the hearing on September 18, 2019, the State argued that, after Officer Atkins saw Dargis through a vehicle window, lighting what appeared to be a methamphetamine pipe, he had observed a crime, and had probable cause "to intrude upon the defendant's

---

[7]  The State mentions, for the first time on appeal, that a search conducted incident to a proper arrest is constitutional, but does not argue that exception as being applicable in this case.  Thus, we do not address whether the search of Dargis's vehicle was constitutionally valid as a search conducted incident to a proper arrest. <u>See</u> Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7) ("Points not argued may be deemed waived"); <u>see also</u>, <u>State v. Moses</u>, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003) ("[a]s a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal").

[8]  In its Memorandum in "Opposition to [Dargis's Second Motion to Suppress]," the State referred to the open and plain view doctrines interchangeably. Although the State provided a brief explanation of the open view doctrine, it did not explain the plain view doctrine or how the two doctrines differ.

situation," order her out of the vehicle and search for the pipe he saw her drop. The State also attempted to address the open and plain view exceptions to the warrant requirement, apparently arguing that the open view doctrine allowed Officer Atkins to search the vehicle, without a warrant, for the pipe he had seen Dargis drop, and that the marijuana was found based on the officer's plain view. The State also asserted Chong allowed Officer Atkins to search the car without a warrant, arguing that in Chong, officers were allowed to make a vehicle search without a warrant based only on observing furtive suspicious behavior. On appeal, the State continues to argue the pipe was found based on the open view doctrine, the marijuana was found in plain view, and that Chong supports its position that Officer Atkins did not require a warrant.

Although the underlying facts in Chong may be somewhat similar to the facts of this case, Chong is inapposite because the Hawaiʻi Supreme Court did not consider the open or plain view doctrines in Chong. Further, the State argues for an incorrect reading of Chong. During the September 18, 2019 hearing, the State argued that:

> the facts in -- *Chong* is not a plain view, it's acting -- it's talking about whether it's okay to conduct a warrantless search.
> And in *Chong*, they were acting furtive, they were acting suspicious, and they were dropping, like, eye drops in their eyes, and based just on those -- that basis, they were permitted to go inside the car and do a search of the car.
> . . . .
>
> [The State:] Okay, but for the initial going into the car to retrieve what [the police] just observed was a crime in the commission under *Chong*, a warrantless search is permitted, going into the car without a warrant if you see what -- what they just saw. And again, in *Chong*, they were permitted to go into the car without a warrant based on furtive suspicion.

On appeal, the State argues for a similarly incorrect reading of Chong, that a warrantless search of a constitutionally protected area is permitted based solely on suspicion by the police that a crime had been committed or to retrieve suspected contraband.

This argument is contrary to the holding in <u>Chong</u> and is without merit.

The State also argues the search of Dargis's vehicle is valid based on Hawaiʻi Supreme Court decisions in <u>State v. Elliott</u>, 61 Haw. 492, 605 P.2d 930 (1980), <u>State v. Agnasan</u>, 62 Haw. 252, 614 P.2d 393 (1980), and <u>State v. Powell</u>, 61 Haw. 316, 603 P.2d 143 (1979).  However, these cases are distinguishable. In both <u>Elliot</u>, 61 Haw. at 497-98, 605 P.2d at 934, and <u>Agnasan</u>, 62 Haw. at 255-56, 614 P.2d at 395-96, the Hawaiʻi Supreme Court held that both probable cause and exigent circumstances were present to justify the immediate warrantless search of a defendant's vehicle.  The Hawaiʻi Supreme Court did not consider the open or plain view doctrines in <u>Elliott</u> or <u>Agnasan</u>.  In <u>Powell</u>, the Hawaiʻi Supreme Court held that the plain view doctrine justified the seizure of evidence from the defendant's vehicle.  61 Haw. at 325, 603 P.2d at 149-50.  Here, however, the State does not explain how <u>Powell</u> is relevant to this case. <u>Powell</u> is inapplicable in supporting the State's position that the open view doctrine allowed Officer Atkins to initially search the vehicle for the ice pipe.  Thus, <u>Powell</u> is unhelpful to the State in justifying Officer Atkins initially searching the vehicle, such that the plain view doctrine could apply to his discovery of the marijuana.  Accordingly, <u>Elliott</u>, <u>Agnasan</u>, and <u>Powell</u> are inapposite.

### B.  Plain View and Open View

The Hawaiʻi Supreme Court has distinguished between the plain view doctrine and open view doctrine as follows:

> In the plain view situation, the view takes place *after* an intrusion into activities or areas as to which there is a reasonable expectation of privacy. The officer has already intruded, and, if his or her intrusion is justified, the objects in plain view, sighted inadvertently, will be admissible.
>
> In the open view situation, however, the observation takes place from a non-intrusive vantage point. The governmental agent is either on the outside looking outside or on the outside looking inside at that which is knowingly exposed to the public. The object under observation is not within the scope of the constitution.

State v. Meyer, 78 Hawaiʻi 308, 312-13, 893 P.2d 159, 163-64 (1995) (brackets and citation omitted).

The Hawaiʻi Supreme Court also explained that for <u>open view</u> sightings:

> the warrantless seizure of the evidence in question depends on whether the item is in a constitutionally protected area. If the evidence is not in an area where there is a reasonable expectation of privacy, that is, if it is located in a common space, such evidence is subject to seizure by the governmental agent who spots it, without the necessity of a warrant or exigent circumstances. . . .
>
> However, <u>if the evidence in question is in open view in an area in which the evidence retains its constitutional protection, a warrant is required or exigent circumstances must exist before the object may be seized</u>.

<u>Id.</u> at 313, 893 P.2d at 164 (emphasis added).

With respect to seizure of evidence under the <u>plain view</u> doctrine, three factors are required: "(1) prior justification for the intrusion; (2) inadvertent discovery; and (3) probable cause to believe the item is evidence of a crime or contraband." <u>Id.</u> at 314, 893 P.2d at 165. Under the plain view doctrine, once a warrantless intrusion is justified and the police are placed in plain view of the evidence, exigent circumstances are not necessary to seize the evidence. <u>Id.</u> at 316, 893 P.2d at 167.

Here, the Circuit Court correctly concluded that the open view doctrine applies to the "ice pipe" in Dargis's hand, which Officer Atkins observed while outside the vehicle. Dargis then dropped the pipe, Officer Atkins ordered her to exit the vehicle, took her to the rear of the vehicle and arrested her. At some point after Dargis exited the vehicle, Officer Atkins observed the pipe on the floor of the vehicle where Dargis's feet had been.[9] Under the open view doctrine, exigent circumstances

---

[9] Among its various positions on appeal, the State claims the pipe on the floor was "easily visible through the driver's-side window or the windshield to any passerby that had bothered to look into the car[,]" and that the pipe had been discovered in open view. The State apparently agrees that the open view doctrine applies to the pipe and, in any event, does not challenge COL 2 in which the Circuit Court concluded that the open view doctrine applies given Officer Atkins being outside of the vehicle when he observed the pipe with residue in Dargis's hand. Further, the State does not argue that Officer Atkins saw the pipe in plain view while Dargis exited the

(continued...)

were required before seizing the pipe from Dargis's vehicle without a warrant.  See State v. Kapoi, 64 Haw. 130, 141, 637 P.2d 1105, 1114 (1981) ("even the 'open view' of possible contraband, without more, furnished no basis for its seizure without a warrant. For 'no amount of probable cause can justify a warrantless search or seizure absent exigent circumstances.'" (quoting Coolidge, 403 U.S. at 468)).

For purposes of the open view doctrine, the State had the burden to establish exigent circumstances to seize items without a search warrant.  State v. Ramos-Saunders, 135 Hawaiʻi 299, 306, 349 P.3d 406, 413 (App. 2015).  The State failed to provide any evidence or argument to the Circuit Court that exigent circumstances existed to allow the warrantless search of the vehicle.  At the hearing on Dargis's Second Motion to Suppress, the parties stipulated to the testimony by Officer Atkins from the hearing on Dargis's First Motion to Suppress, during which Officer Atkins mainly testified as to whether there had been reasonable suspicion for the stop of the vehicle. During the hearing on Dargis's Second Motion to Suppress, the Circuit Court asked the State whether Officer Atkins should have obtained either a warrant or needed exigent circumstances to seize the pipe under the open view doctrine and the State replied, "[it] would not agree with that under the Chong case." The State then continued to rely on an incorrect reading of Chong, as discussed above, and argued that neither a search warrant nor exigent circumstances were required to search the vehicle.  Thus, the State waived any argument that there were exigent circumstances.  See Moses, 102 Hawaiʻi at 456, 77 P.3d at 947 ("[a]s a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal").

---

[9](...continued)
vehicle.  Therefore, we consider the pipe under the open view doctrine. See HRAP Rule 28(b)(7).

Similarly, the State's contention that the evidence from Dargis's vehicle would have been inevitably seized was not raised before the Circuit Court and is waived on appeal.  Id.

### C.  The Circuit Court's Conclusions of Law

Finally, the State argues that the Circuit Court erred in concluding there were no exigent circumstances and challenges the Circuit Court's COLs 4, 5, 10, 11, and 12.[10]  The State

---

[10]  The Circuit Court numbered its COLs from 1 through 5, included subsections "a" through "e" for COL 5, then resumed numbering the remaining COLs starting from 10. The challenged COLs state:

> 4. In regard to exigent circumstances, no testimony was provided by Officer Atkins that Defendant Dargis's car may be moved or that the pipe observed by Officer Atkins might be removed or destroyed before a warrant could be obtained.
>
> 5. The following supported Defendant's argument that no exigent circumstances existed:
>
>    a. The car was parked along Kamehameha Highway in Kahuku, which is arguably a rural area of the island of Oahu which limited the risk of the car or the evidence being removed.
>
>    b. At approximately 4 a.m. in the morning there was not a lot of traffic or people in the area who could have disturbed the car.
>
>    c. The defendants were alone in the vehicle and both were arrested. No one else at the time had access to the car.
>
>    d. There was no testimony presented that the pipe was visible in the car such that someone would be tempted to remove it.
>
>    e. No evidence was presented that an officer could not have been posted to watch over the car while a warrant was obtained.
>
> 10. There was no realistic threat that the evidence would be lost while Officer Atkins sought a warrant to search the car.
>
> 11. While it may have been inconvenient to obtain a warrant, such inconvenience does not justify a violation of Defendant's right to be free from an illegal search and seizure.
>
> 12. The pipe was illegally seized and therefore is excluded from evidence. The marijuana that was located during the seizure of the pipe is "fruit of the poisonous tree" and is also excluded from evidence.

11

contends that there is no evidence to support the majority of the Circuit Court's COLs and that the COLs are speculative.[11]

We note that the Circuit Court's determinations in COLs 5 and 10 appear to be more akin to findings of fact. Nevertheless, even if we assume the record lacks substantial evidence to support the Circuit Court's findings in this regard, it was the State's burden to prove exigent circumstances.  As the Hawaiʻi Supreme Court has explained, an exigent circumstance

> exists when the demands of the occasion reasonably call for an immediate police response. More specifically, it includes situations presenting an immediate danger to life or serious injury or an immediate threatened removal or destruction of evidence. However, the burden, of course, is upon the government to prove the justification, and whether the requisite conditions exist is to be measured from the totality of the circumstances. And in seeking to meet this burden, the police must be able to point to specific and articulable facts from which it may be determined that the action they took was necessitated by the exigencies of the situation.

Ramos-Saunders, 135 Hawaiʻi at 306, 349 P.3d at 413 (emphases added) (ellipses omitted) (quoting Jenkins, 93 Hawaiʻi at 103, 997 P.2d at 29).  As discussed above, the State waived its arguments in the Circuit Court whether exigent circumstances were present in this case.  The State did not offer any argument that exigent circumstances were present at the time Officer Atkins conducted a warrantless search of Dargis's vehicle and Officer Atkins did not provide any testimony that his search was necessitated by the exigencies of the situation.

Thus, the State did not meet its burden of establishing exigent circumstances to justify the warrantless search of the vehicle.  Therefore, even if the record lacks evidence in support of COLs 5 and 10, the pertinent rulings in COLs 4, 11, and 12 are not wrong.

---

[11]  For example, the State argues there is no evidence to support the Circuit Court's COL 5.c., that after Dargis and Kawaguchi were arrested, no one else at the time had access to the car and thus, COL 5.c. is "pure speculation and is clearly erroneous."

The State also argues COL 5.a. is erroneous because the State of Hawaiʻi has a higher motor vehicle theft rate than the rest of the United States on average and that an automobile in a less populated area is arguably easier to break into.

**IV. Conclusion**

Based on the foregoing, the Order Granting Motion to Suppress entered on October 23, 2019, by the Circuit Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawaiʻi, June 28, 2021.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney,
for Plaintiff-Appellant.

Phyllis J. Hironaka,
Deputy Public Defender,
for Defendant-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge