STATE OF HAWAII, Plaintiff-Appellee, *v.* PATRICK FIGAROA, Defendant-Appellant

NO. 8015

(CRIMINAL NO. 2088)

SEPTEMBER 17, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant appeals from his conviction of Rape in the First Degree, Hawaii Revised Statutes (HRS) § 707-730(1)(a)(i) (1976, as amended).

Defendant argues that the trial court erred in admitting his confession into evidence. He contends his warrantless arrest was invalid under HRS § 803-5 (1976, as amended), and, therefore, the confession that followed was inadmissible. He further argues that the confession was inadmissible because the prosecution failed to prove it was voluntary and an act of free will.

We find both contentions to be without merit and affirm the judgment below.

Defendant was convicted of raping a young woman on Hanamaulu Road on the island of Kauai on February 14, 1980. The victim described the assailant and his automobile to police that same evening. The assailant was described as being 5'8" or 9" tall and weighing 145 to 155 pounds. He was also described as being "Filipino-looking" and not Oriental or Caucasian. The automobile was described as being blue with racing lines.

On February 15, 1980, Detective Dana Akita, who was then conducting the investigation, received information from Officer Maurice Contrades pinpointing defendant as a possible suspect and identifying the people who owned the car. The information was from an anonymous source. On that same day, Akita talked directly with the victim. She confirmed her previous description of her attacker but added that she believed he had a light mustache. On February 19, 1980, Akita received other information from an anonymous caller naming defendant as the assailant.

On February 20, 1980, Akita received information from Cassie Welsh of the Kauai Women's Center that an anonymous caller had named defendant as the attacker. On the same day, Akita and Officer Albert Kaohi went to the residence of Athena Estacio to examine Estacio's automobile. This was also defendant's residence. The information from Contrades was that the automobile belonged to Estacio. The Estacio automobile matched the description given by the victim. Akita also had determined from the identification picture in defendant's driver's license file that defendant's facial features matched the description of the attacker.

After checking the Estacio residence, the officers went to defendant's work site[1] to take him into custody. He was found at the Lihue Plantation mill and, upon being asked, went voluntarily with the officers to the police station. Upon arrival at the station, defendant was placed under arrest for investigation of Rape in the First Degree. The officers did not have a warrant.

Defendant was informed of his constitutional rights pursuant to *Miranda*.[2] He acknowledged his understanding of those rights and signed a police department form waiving them.

Initially, defendant denied the charges. He told the officers that he was at home with the Estacios at the time of the incident. However, when the officers informed him they would have to check the alibi, he admitted he had committed the rape. He gave the officers a full confession. The interrogation lasted thirty to forty minutes. Defendant also consented to the police obtaining from his home the clothing he had worn on the day of the offense. The victim later identified defendant as her attacker in a police lineup.

Defendant filed a motion to suppress his confession and all evidence arising out of his arrest, contending the warrantless arrest was illegal. After an initial hearing, defendant was allowed to amend his motion to include as a further ground his claim that he did not understand the *Miranda* warnings given him at the time of his arrest. The trial court denied the motions, ruling that the arresting officers had probable cause to believe the defendant had committed the offense charged; that defendant had knowingly, intelligently and willingly waived his constitutional right to remain silent; that defendant had consented to the seizure of the clothing he had worn on the day of the incident; and that defendant's motion to suppress the lineup evidence was untimely made.[3]

Defendant first contends that his confession is inadmissible because it followed his illegal arrest. Although defendant concedes there was probable cause for his arrest, he contends that under the facts of this case and pursuant to the Fourth Amendment to the

---

[1] Defendant was employed by John Craft Company as a sandblaster.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Defendant has not raised the question on appeal of the recovery of his clothing or the validity of the lineup.

United States Constitution,[4] Article I, Section 7 of the Hawaii State Constitution,[5] and HRS § 803-1 (1976), a warrant was required for his arrest.

Defendant argues as follows: HRS § 803-1 requires a warrant for every arrest, except in those cases set forth in § 803-2, 3, 4[6] and 5; that the facts of this case do not bring it within *any* of those exceptions; therefore, a warrant was required before defendant could be arrested and, since there was none, his arrest was illegal and the confession was inadmissible in evidence.

HRS § 803-1 (1976) states:

No arrest of any person shall be made without first obtaining a warrant or other process therefor from some magistrate, except in the cases provided in this chapter or otherwise provided by law.

Defendant's warrantless arrest clearly cannot be justified under § 803-2, 3 and 4 (1976). Therefore, we examine HRS § 803-5 (1976, as amended), the remaining statutory exception.

At the time of the offense, HRS § 803-5 read as follows:

Section 803-5. *By policeman without warrant.*  Policemen, or

---

[4] The Fourth Amendment of the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[5] Article I, section 7 of the Hawaii State Constitution provides:

Section 7.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

[6] § 803-2 *By oral order.*  Where a breach of the peace or other offense has been committed, and the offender endeavors to escape, he may be arrested by virtue of an oral order of any magistrate, or without the order, if no magistrate is present.

§ 803-3 *By person present.*  Anyone in the act of committing a crime, may be arrested by any person present, without a warrant.

§ 803-4 *On suspicion.*  Whenever a crime is committed, and the offenders are unknown, and any person is found near the place where the crime was committed, either endeavoring to conceal himself, or endeavoring to escape, or under such other circumstances as to justify a reasonable suspicion of his being the offender, the person may be arrested without warrant.

other officers of justice, in any seaport or town, even in cases where it is not certain that an offense has been committed, may, without warrant, arrest and detain for examination such persons as may be *found under such circumstances* as justify a reasonable suspicion that they have committed or intend to commit an offense.[7] [Emphasis and footnote added.]

The question raised by defendant is the construction of the phrase "found under such circumstances" in § 803-5. That phrase has been a part of the statutory law in this jurisdiction since 1850.[8] What the drafters may have meant by the phrase at that time is difficult to discern and the briefs do not bring to the court's attention any case interpreting this language. The only case where the phrase is mentioned is in Justice Dole's dissent in *In Re Man Nun*, 7 Haw. 454 (1888). Justice Dole merely paraphrased the penal code section and noted that it was an exception to the arrest warrant requirement. In the recent case of *State v. Kapoi*, 64 Haw 130, 637 P.2d 1105 (1981), Justice Nakamura stated that § 803-5 approved the warrantless arrest of a person by a law enforcement officer when circumstances gave rise to a reasonable suspicion that the person had committed an offense.

Defendant argues that "found under such circumstances" means that the police must obtain an arrest warrant in every situation not covered by the other statutory exceptions, unless they have come upon the arrested person at a time when "exigent circumstances" were present, or under such a factual situation then observed by the arresting officers as to indicate then and there that the arrested

---

[7] This section was amended in 1980 and 1981, and now provides:

§ 803-5 *By police officer without warrant.* (a) A police officer or other officer of justice, may, without warrant, arrest and detain for examination such persons as may be found under such circumstances as to justify probable cause to believe that they have committed any offense, whether in the officer's presence or otherwise.

(b) For purposes of this section, a police officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is being committed. [1981 SLH, Act 186, section 1.]

The amendment was not in effect at the time of the offense, but defendant's argument remains the same under both the old and new HRS § 803-5.

[8] Penal Code of 1869, Chapter XLIX, section 5, compiled from the Penal Code of 1850.

person has committed or is about to commit a crime. In this case, he argues, the police had time to obtain an arrest warrant and failed to get one only because it was inconvenient. The prosecution argues that the phrase merely refers to all of the facts and circumstances of which the police officer had knowledge at the time of the arrest which gave him probable cause to believe the person arrested had committed a crime.

We agree with the prosecutor.

In *State v. Crowder*, 1 Haw. App. 60, 613 P.2d 909 (1980), this court held that, when an arrest is challenged as being unlawful, the State has the burden of showing the arresting officer had probable cause to make the arrest. The State is required to show that, at the moment of arrest, the arresting officer had reasonable grounds to believe from the facts and circumstances personally known to him or of which he had trustworthy information, that the person arrested had committed or was committing an offense. *Id.* at 66.

There is no question that police officers are authorized to make warrantless arrests based upon probable cause. *State v. Kapoi, supra; State v. Bennett*, 62 Haw. 59, 610 P.2d 502 (1980); *State v. Lloyd*, 61 Haw. 505, 606 P.2d 913 (1980); *State v. Vance*, 61 Haw. 291, 602 P.2d 933 (1979); *State v. Barnes*, 58 Haw. 333, 568 P.2d 1207 (1977); *State v. Tsukiyama*, 56 Haw. 8, 525 P.2d 1099 (1974); *State v. Gustafson*, 55 Haw. 65, 515 P.2d 1256 (1973); *State v. Delmondo*, 54 Haw. 552, 512 P.2d 551 (1973); *State v. Chong*, 52 Haw. 226, 473 P.2d 567 (1970); *State v. Texeira*, 50 Haw. 138, 433 P.2d 593 (1967).

In *State v. Chong, supra,* the Hawaii Supreme Court said, "probable cause is generally based upon a combination of factors, which taken together form a sort of mosaic, of which any one piece by itself often might not be enough to constitute probable cause, but which, when viewed as a whole, does constitute probable cause." *Id.* at 231.

In this case, the mosaic was formed between February 14, 1980 and February 20, 1980. On the day of the rape, the police were given a description of the vehicle and the perpetrator. In the ensuing days, they were given information indicating where the car could be found and that defendant had committed the offense.[9] The police

---

[9] Because this information was from anonymous sources, the police could not rely on it for probable cause. The information did, however, lead them to "hard" evidence showing probable cause.

went to the Estacio home and found the vehicle answering the description they had been given. The check of defendant's driver's license photo indicated he answered the description of the assailant. When they went to defendant's place of work, they saw that he matched the description given them. They had probable cause at that time to make an arrest.

It is sufficient answer to defendant's argument to note the cases cited above from this jurisdiction and the language of the United States Supreme Court in *Gerstein v. Pugh,* 420 U.S. 103 (1975),

> Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. *Thus, while the Court has expressed a preference for the use of arrest warrants where feasible, it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant.* [Citations omitted and emphasis added.]

*Id.* at 113.

*State v. Lloyd, supra,* however, restricts the broad general rule of warrantless arrests in this jurisdiction. In *Lloyd,* the court treats a warrantless arrest in a home on the same basis as a search and states that absent exigent circumstances, a warrant is necessary to effect an arrest in a private home. Further, in *United States v. Watson,* 423 U.S. 411 (1976), the United States Supreme Court ruled that probable cause will justify a warrantless arrest *in a public place.* Watson was arrested in a public restaurant. In his concurring opinion in *Watson,* Justice Powell notes that the Supreme Court was not deciding whether or under what circumstances a police officer may make an arrest in a private home *or other place where the person arrested has a reasonable expectation of privacy. Watson, supra, id.* at 432.

In view of *Lloyd* and *Watson,* we are constrained to look to whether or not defendant had a reasonable expectation of privacy at his work site in order to determine the validity of his warrantless arrest, probable cause notwithstanding.

Although the issue is not directly raised by defendant in this appeal, we assume for purposes of this opinion that he was "arrested" at the Lihue Plantation mill. *See State v. Crowder, supra,* and *State v. Bennett, supra.*

In determining whether defendant had a reasonable expectation

of privacy when he was arrested at the place where he was working, we adopt the same reasoning used by the courts to determine the reasonableness of a warrantless search, i.e., did the governmental intrusion [the arrest] occur in a place where defendant had a "reasonable expectation of privacy?" Governmental intrusions into matters or activities as to which an individual has shown a reasonable expectation of privacy are subject to the warrant requirement absent exigent circumstances, *State v. Holbron,* 65 Haw. 152, 648 P.2d 194 (1982); *State v. Stachler,* 58 Haw. 412, 570 P.2d 1323 (1977). This expectation is not subjective, but must be one which society is prepared to recognize as reasonable. *State v. Scanlan,* 65 Haw. 159, 649 P.2d 737 (1982).

In *Holbron, supra,* the court stated that whether a reasonable expectation of privacy exists under the constitution is determined by considering the nature of the place involved, the precautions taken by the defendant to insure his privacy and the position of the government officer.

In *Scanlan, supra,* our supreme court upheld the action of the trial court in denying defendant's motion to suppress evidence seized without a search warrant from a junkyard where the evidence showed that defendant occasionally slept on the premises and on other occasions worked on his car there with the owner's permission. The court held defendant did not have a reasonable expectation of privacy in light of all the surrounding circumstances and there is "no single criterion which determines his right to reasonable expectation of privacy for constitutional purposes." Defendant's assertion to occasional legitimacy standing alone was not controlling and did not give rise to constitutional privacy expectation.

In the case before us, defendant was arrested on private property which did not belong to him or his employer. Defendant was first seen by the officers on a catwalk outside the mill looking down on the officers and came down when called by his employer. The evidence indicates that defendant had no control over who came or went onto the property, and had no right to preclude anyone from coming onto the property. He did not exhibit an expectation of privacy. *State v. Holbron, supra.* We find from all the circumstances he had no right to privacy on the premises in the constitutional sense. *See State v. Scanlan, supra,* and *State v. Holbron, supra.* We do not think "society is prepared to recognize as reasonable" an expectation of

privacy in these circumstances. *State v. Scanlan, supra.* We do not think that society is prepared to say that, armed with probable cause, police officers may not go onto private premises in the circumstances shown here to effect an arrest. *See also House v. Ane,* 56 Haw. 383, 538 P.2d 320 (1975) and *State v. Kimball,* 54 Haw. 83, 503 P.2d 176 (1972), where the warrantless arrests were made in a place of busi-ness and a school ground, respectively.

Defendant further contends that the evidence at the preliminary hearing showed that he did not understand the *Miranda* warnings and that his confession was not voluntary because he was at the police station, felt under "pressure," and was given promises of leniency and help by the police. He claimed that one police officer was "big and ugly," that he felt he was being pressured by them, particularly when they told him they would have to check his alibi, and that the officers had promised to get psychiatric help for him and to speak to the prosecutor to obtain leniency for him. On cross-examination, defendant admitted that he had been arrested in 1977, had been given the same *Miranda* warnings and had refused to make a statement at that time. The police officers testified they used no force or threats against defendant; he appeared calm and cool; and they made no promises to him.

We note initially that the mere fact that defendant was in custody and at the police station does not render his confession involuntary. *State v. Shon,* 47 Haw. 158, 385 P.2d 830 (1963). Therefore, the issue of voluntariness in this case turned on the credibility of the wit-nesses.

The rule relating to appellate review of a trial court's admission of a confession into evidence as being voluntary is that the reviewing court may not disturb the finding of admissibility unless the defen-dant demonstrates a *clear abuse* of *discretion* on the part of the trial judge in the determination of admissibility. *State v. Green,* 51 Haw. 260, 457 P.2d 505 (1969).[10]

In this case the trial judge heard the testimony and weighed the

---

[10] In *State v. Kalani,* 3 Haw. App. 334, 649 P.2d 1188 (1982), we noted that we are bound to follow *Green,* but that we think appellate review should be governed by the clearly erroneous rule, *Id.,* note 5. As in *Kalani,* the result would be the same here if we applied the clearly erroneous rule.

credibility of the witnesses relating to the defendant's charges. Defendant's admission that he had previously been given *Miranda* warnings and refused to make a statement was destructive of his credibility. Defendant has not carried his burden of showing a clear abuse of discretion.

Affirmed.

*Patricia A. Loo* and *Michael Tanigawa (Alvin T. Sasaki* on the briefs), Deputy Public Defenders, for defendant-appellant.

*Lorna A. Nishimitsu (Michael N. Nii* on the brief), Deputy Prosecuting Attorneys, County of Kauai, for plaintiff-appellee.