[No. D002600. Fourth Dist., Div. One. Oct. 22, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN TERRILL LEE, Defendant and Appellant.

**COUNSEL**

Douglas W. Grinnell, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Frederick R. Millar, Jr., Rudolf Corona, Jr., and Pamela A. Ratner, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—Stephen Terrill Lee appeals from a judgment convicting him of possessing cocaine (Health & Saf. Code, § 11350),[1] claiming his warrantless arrest and the seizure of cocaine from his private law office was

---

[1]Lee was acquitted by the jury of possession for sale and sale of cocaine. (Health & Saf. Code, §§ 11351 and 11352.)

nonconsensual and under nonexigent circumstances, and violated his constitutional right to be free from unreasonable seizures. His motion to suppress the cocaine discovered as a direct result of the arrest was denied on the sole stated ground the lower court believed Lee was not entitled to protection from warrantless arrest in his private law office, accessible only after contacting a receptionist in an outer room. Because of its threshold holding, the court never considered whether the facts showed the entry for the arrest was consensual or justified by exigent circumstances. We hold the facts of this case bring into play the constitutional protection expressed in *People v. Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], and reverse the judgment.

## FACTS

On April 20, 1982, a police informant purchased cocaine with marked bills from Lee at Lee's law office. The informant had told police Lee would deal only from his office, instead of his residence, because the office was "impregnable." Lee's office was located on the fourth story of a building within an office suite with no exit except through the front door. There was a hallway outside the office suite, a front door leading into the reception area for the suite, and a series of business offices within the suite, with Lee's located toward the back. Ten or twelve police officers stood at each end of the hallway outside the suite and watched the informant enter the closed front door to the suite. On exiting, he handed an officer a bag of cocaine, and stated there should be more narcotics in the office and that Lee had said he knew the narcotics task force was on to him and would double the money if the informant was being paid by them.

Some officers left with the informant and the others entered the suite. One officer went to the receptionist and quickly showed her his identification. The officers, dressed in civilian clothes but wearing badges, went directly to the back to Lee's office without waiting for her to announce them. The officers knocked on the door, attempted to open it, and found it was locked. They knocked several more times. Lee's secretary opened the door. There was no conversation. When the secretary stepped out of the way, the officers saw Lee inside, but no contraband was visible from the door.

Without any conversation or express invitation, the officers entered and arrested Lee.

At the police station, Lee was seen taking a vial of cocaine out of his pocket. He was convicted only of illegally possessing the cocaine in this vial.

## I

Absent exigent circumstances or consent, warrantless arrests within the *home* are per se unreasonable seizures, prohibited by article I, section

13 of the California Constitution and the Fourth Amendment of the federal Constitution, even if there is probable cause for the arrest. (*People* v. *Ramey, supra,* 16 Cal.3d at pp. 275-276; *Payton* v. *New York* (1980) 445 U.S. 573, 576 [63 L.Ed.2d 639, 644-645, 100 S.Ct. 1371].)

The issue here is whether warrantless arrests at a *place of business* are equally restricted. In *United States* v. *Driver* (9th Cir. 1985) 776 F.2d 807, 809-810, the court found a reasonable expectation of privacy and held unlawful a nonconsensual entry and nonexigent, warrantless arrest in a closed office area located on the upper level of a public furniture showroom, noting the area was not exposed or visible to the public and the drug-related arrest was not based on any regulation of the business activities.  ■ We agree with the court in *Driver* that an occupant of an interior office not open to the general public has a right to be free from warrantless arrest therein absent consent or exigent circumstances.

The United States Supreme Court has held that the arrest of a suspect when he is a customer in a *public* restaurant at midday does not involve the privacy issues raised by warrantless arrests in a home. (*People* v. *Watson* (1976) 423 U.S. 411, 413, 418, fn. 6 [46 L.Ed.2d 598, 602-603, 605-606, 96 S.Ct. 820].)

However, in reaching its conclusion in *Payton* that warrantless arrests in the home are restricted, the court distinguished *Watson* as involving an arrest in a *public place,* for which the common law rule permitting such warrantless arrests was clear. (*Payton* v. *New York, supra,* 445 U.S. at pp. 574, 590, 596-598, 601, 603 [63 L.Ed.2d at pp. 643, 653, 656-658, 659-661].) In short, the distinction between *Payton* and *Watson* is not that the former involves a home and the latter a business, but rather that the former involves a place of private retreat and the latter involves a place of public accessibility.[2]

Several courts in other jurisdictions have evaluated whether a place of business gives rise to privacy rights so as to preclude a warrantless arrest therein, and concluded under the facts of the particular case, no reasonable expectation of privacy existed. These cases did not, however, find no privacy right because the premise was a business rather than a home, but instead carefully examined whether the particular circumstances warranted a privacy right. (See, e.g., *State* v. *Figaroa* (1982) 3 Hawaii App. 377 [650 P.2d 1373, 1378-1379] [no expectation of privacy at a mill worksite, where defendant was apparently a subcontractor's employee having no control over who came or went onto the property]; *Clark* v. *State* (Tex.App. 1985) 686

---

[2]See also the concurring opinions in *People* v. *Watson, supra,* 423 U.S. at pages 432-433 [46 L.Ed.2d at pages 614-615], which emphasize the decision rests on the *public* nature of the place where the warrantless arrest occurred, and does not decide under what circumstances an entry into a *private* place may be made.

S.W.2d 253, 254 [no privacy expectation at a badly rundown building, without a "no trespassing" sign, fence, or front door, and no indication it was being used for residential or business purposes]; *State* v. *Doukales* (1973) 111 R.I. 443 [303 A.2d 769, 772] [lawful entry into (and subsequent warrantless arrest in) variety store, which was business establishment open to the public].) Similarly, in California cases where Penal Code section 844's (arrest) or section 1531's (search) "knock and notice" requirements were held not applicable since the premises were a business rather than a residence, the business area was located behind an unlocked door which was freely accessible to the public. (See, e.g., *People* v. *Maita* (1984) 157 Cal.App.3d 309, 323 [203 Cal.Rptr. 685] ["[n]one of the purposes of section 1531 and section 844 with their concern for intrusions into residential privacy would be served by requiring police officers to state their 'authority and purpose' before crossing the threshold of a theater into which the general public has been invited"]; *People* v. *Lovett* (1978) 82 Cal.App.3d 527, 532 [147 Cal.Rptr. 136] [a second-hand store which, the defendant admitted, anybody could come in even without his permission]; *People* v. *James* (1971) 17 Cal.App.3d 463, 466 [95 Cal.Rptr. 121] [Black Panther headquarters open for business and located in a business building with a front door which led to the sidewalk, which had no screen, which was wide open, and which led directly into the room where there were desks and chairs].)

In contrast, dicta in *Payton* v. *New York, supra,* 445 U.S. at pages 586-587 [63 L.Ed.2d at pages 650-651], suggests that business areas which are not openly accessible to the public carry the same privacy rights as homes: "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable.[25] Yet it is also well settled that objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity. *The distinction between a warrantless seizure in an open area and such a seizure on private premises was plainly stated in G.M. Leasing Corp.* v. *United States,* 429 U.S. 338, 354:

"'It is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, *and it is quite another thing to effect a warrantless seizure of property, even that owned by a corporation, situated on private premises to which access is not otherwise available for the seizing officer.*'

"As the late Judge Leventhal recognized, this distinction has equal force when the seizure of a person is involved." (Italics added.) Footnote 25 of the quoted passage provides: "As the Court stated in *Coolidge* v. *New Hampshire:* [¶] '*Both sides to the controversy appear to recognize a distinction between searches and seizures that take place on a man's property—*

*his home or office—and those carried out elsewhere.* It is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of "exigent circumstances."' [¶] . . . 403 U.S., at 474-475, 477-478." (First italics added.) (*Ibid.*)[3]

In *G.M. Leasing Corp.* v. *United States* (1977) 429 U.S. 338, 351-352, 358-359 [50 L.Ed.2d 530, 542-543, 547-548, 97 S.Ct. 619], cited in *Payton*, the court held a warrantless, nonexigent seizure of books and records by the Internal Revenue Service (IRS) from a corporation's offices was an unlawful invasion of privacy even though based on probable cause.[4] *G.M.* states: *"The respondents do not contend that business premises are not protected by the Fourth Amendment. Such a proposition could not be defended in light of this Court's clear holdings to the contrary. . . .*

"The Court, of course, has recognized that a business, by its special nature and voluntary existence, may open itself to intrusions that would not be permissible in a purely private context. . . .

". . . . . . . . . . . . . . . . . . . . . . .

"In the present case, however, the intrusion into petitioner's privacy was not based on the nature of its business, its license, or any regulation of its activities. . . ." (*Id.* at pp. 353-354 [50 L.Ed.2d at pp. 543-545], italics added.)

In *Donovan* v. *Dewey* (1981) 452 U.S. 594, 598-606 [69 L.Ed.2d 262, 268-274, 101 S.Ct. 2534], the court clarified an exception to the warrantless search and seizure prohibition on commercial premises for administrative searches conducted under a legislative scheme which establishes predictable and guided inspection standards (i.e., inspections under the Gun Control Act and the Mine Safety and Health Act).[5] *Donovan* recognizes the privacy interests at a business are not the same as those at a home, stating: "The greater latitude to conduct warrantless inspections of commercial property

---

[3]*Ramey* contains no broad dicta as does *Payton*, but expressly limits its holding to dwellings. (*People* v. *Ramey, supra,* 16 Cal.3d at p. 275, fn. 5.)

[4]In contrast, the IRS's seizures of automobiles from public streets, parking lots, and other open places where the petitioner had no property interest were held not to involve any invasion of privacy. (*G.M. Leasing Corp.* v. *United States, supra,* 429 U.S. at pp. 344, 351-352 [50 L.Ed.2d at pp. 538, 542-543].)

[5]If the legislative scheme "fails to tailor the scope and frequency of such administrative inspections to the particular health and safety concerns," such as under the Occupational and Safety Act of 1970, a warrant is constitutionally required. (*Donovan* v. *Dewey, supra,* 452 U.S. at p. 601 [69 L.Ed.2d at p. 270], discussing *Marshall* v. *Barlow's, Inc.* (1978) 436 U.S. 307 [56 L.Ed.2d 305, 98 S.Ct. 1816].)

reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections. [Citation.]" (*Id.* at pp. 598-599 [69 L.Ed.2d at pp. 268-269].)

However, in a footnote, *Donovan* indicates the exception is *not* applicable to searches which are not conducted under a legislative scheme authorizing warrantless administrative searches, but rather are seeking contraband or evidence of crime, stating: "Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant. *Steagald* v. *United States,* 451 U.S. 204 (1981); *Payton* v. *New York,* 445 U.S. 573 (1980); *Johnson* v. *United States,* 333 U.S. 10 (1948). Of course, these same restrictions pertain when commercial property is searched for contraband or evidence of crime. *G. M. Leasing Corp.* v. *United States,* 429 U.S. 338, 352-359 (1977)." (*Donovan* v. *Dewey, supra,* 452 U.S. at p. 598, fn. 6 [69 L.Ed.2d at p. 268].)

Recently, the United States Supreme Court in *Dow Chemical* v. *United States* (1986) 476 U.S. 227, 238 [90 L.Ed.2d 226, 237, 106 S.Ct. 1819, 1826] again recognized in dicta the privacy right which attaches to business premises, although not as strictly as it attaches to homes, citing *Donovan's* administrative inspection exception, and noting "'[w]hat is observable by the public is observable without a warrant, by the Government inspector as well' [citation]." (*Id.* at p. 238 [90 L.Ed.2d at p. 237].)

*Dow Chemical* holds that open areas of an industrial plant complex with numerous plant structures spread over an area of 2,000 acres are not analogous to the curtilage of a dwelling for purposes of aerial surveillance, but are more comparable to an open field, and thus the Environmental Protection Agency did not violate the unreasonable search prohibition by taking aerial photographs of the plant complex without a warrant. (*Dow Chemical* v. *United States, supra,* 476 U.S. at p. 239 [90 L.Ed.2d at p. 238, 106 S.Ct. at p. 1827].)

However, *Dow Chemical* distinguishes the protected privacy right in the interior of the business's covered buildings. "Plainly a business establishment or an industrial or commercial facility enjoys certain protections under the Fourth Amendment. [Citations.]

". . . . . . . . . . . . . . . . . . . . . . .

"*Dow* plainly has a reasonable, legitimate, and objective expectation of privacy within the interior of its covered buildings, and it is equally clear that expectation is one society is prepared to observe. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . .

". . . '[*t*]*he businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property.*' [Citation.]" (*Dow Chemical v. United States, supra,* 476 U.S. at pp. 235-237, italics added [90 L.Ed.2d at pp. 235-237, 106 S.Ct. at pp. 1825-1826].)

■ Finally, dicta by the California Supreme Court in *People* v. *Dumas* (1973) 9 Cal.3d 871, 883 [109 Cal.Rptr. 304, 512 P.2d 1208] (which found a warrantless automobile search lawful) suggests that some business premises, such as offices, are afforded the same privacy right as homes since they fall into the domain of human existence where intrusions seriously threaten personal security, rather than a domain where the same intrusion does not. *Dumas* states: "The United States Supreme Court has held that *homes and offices* fall into the first category, while automobiles fit into the second." (*Ibid.,* italics added.)

In sum, although a business premise does not rise to the level of the sanctity of a home, it clearly is afforded some protection against unreasonable intrusion.

The United States Supreme Court applies Fourth Amendment protection to searches and seizures of *property* from areas of business premises not open or visible to the public. (*G.M. Leasing Corp.* v. *U.S., supra,* 429 U.S. 338.) Under the reasoning of both *Payton* v. *New York, supra,* 445 U.S. at page 589 [63 L.Ed.2d at page 653] and *People* v. *Ramey, supra,* 16 Cal.3d at page 275, the protection afforded property is extended to the person. *Ramey* states: "Moreover, it is incongruous to pay homage to the considerable body of law that has developed to protect an individual's belongings from unreasonable search and seizure in his home, and at the same time assert that identical considerations do not operate to safeguard the individual himself in the same setting." (*Ibid.*)

■ We conclude the rule of *G.M. Leasing Corp.* v. *U.S., supra,* 429 U.S. 338, which prohibits warrantless, nonexigent seizures of property from areas of business premises not open to the general public applies with equal force to seizures of persons. Here, Lee had a reasonable expectation of

privacy in his locked interior office, which was not accessible to the public without his permission.[6]

## II

Respondent argues the discovery of the vial of cocaine was derived from Lee's volitional act of attempting to get rid of it at the police station, and thus attenuated from any illegality in the arrest. ■ To the contrary, Lee's abandonment of the cocaine was a direct result of the arrest, and if the arrest was unlawful, it was obtained in violation of his constitutional guarantees. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 273 [294 P.2d 23] [abandonment of heroin was the direct result of officer's illegal entry, based on lack of search warrant and no showing of probable cause to enter to make an arrest].) Since Lee was acquitted of the crime of selling cocaine, the cocaine given to the police by the informant cannot be the basis for his possession conviction. The only cocaine which could establish possession was that discovered as a result of his arrest. (*People* v. *Ramey, supra,* 16 Cal.3d at p. 277.) Having ruled Lee's office was not subject to the warrant requirement, the trial court did not rule whether the warrantless police entry was lawful because of exigent circumstances or consent, although the People's presentation raised those alternate grounds to support the entry. We express no opinion on what those rulings should be in the event the trial court is again asked to consider them.

### DISPOSITION

The judgment is reversed.

Wiener, Acting P. J., and Lewis, J., concurred.

A petition for a rehearing was denied November 20, 1986, and respondent's petition for review by the Supreme Court was denied January 23, 1987. Kline, J.,* participated therein. Lucas, J., was of the opinion that the petition should be granted.

---

[6]We do not reach the issue of whether the receptionist area of the suite, which apparently was open to the public, is protected from a warrantless arrest.

*Assigned by the Acting Chairperson of the Judicial Council.