Filed 7/8/15  P. v. Greenspan CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HOWARD MAURICE GREENSPAN,<br><br>    Defendant and Appellant. | D065585<br><br>(Super. Ct. No. SCD239375)<br><br>ORDER DENYING PETITION FOR REHEARING, GRANTING AUGMENTATION OF THE RECORD, AND MODIFYING OPINION<br><br>**NO CHANGE IN JUDGMENT** |

THE COURT:

Appellant's petition for rehearing is DENIED.

Appellant's request to AUGMENT the record to include Exhibits A and B attached to the petition for rehearing is GRANTED.

EXHIBIT A:  "PC 1538.5 Hearing," Reporter's Transcript, August 28, 2012.

EXHIBIT B:  SDPD Video 2462, DVD.

The opinion filed on June 17, 2015, is MODIFIED as follows:

1.  The last paragraph commencing on page 2 and continuing to page 3 of the opinion is deleted in its entirety and replaced with the following paragraph:

Defendant filed a motion to suppress the evidence seized from his building based on his claim that the evidence was the fruit of an illegal, warrantless thermal imaging scan of the building.  The relevant facts are as follows.

2.  The first sentence of the first full paragraph on page 3 of the opinion is deleted and replaced with the following sentence:

At 1:55 a.m. on December 18, 2011, the police responded to a robbery involving a gun at 30th and Imperial Avenue in San Diego.

3.  The first sentence of the last paragraph commencing on page 3 and continuing to page 4 of the opinion is deleted and replaced with the following sentence:

Regarding the nature of FLIR thermal imaging, the narcotics detective who secured the search warrant (Schuyler Boyce) explained:  "A FLIR thermal imaging device is a passive, non-intrusive system which detects differences in surface temperature of an object being observed.

4.  The last sentence of the last paragraph commencing on page 13 and continuing to page 14 of the opinion is deleted and replaced with the following sentence:

Also, to the extent the officer continued recording the thermal images at defendant's building once he observed the significant heat differentials, this was a reasonable means to accomplish the "seizure" of the evidence already supported by probable cause.

**THERE IS NO CHANGE IN JUDGMENT.**

McCONNELL, P. J.

Filed 6/17/15  P. v. Greenspan CA4/1  (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D065585 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD239375) |
| HOWARD MAURICE GREENSPAN, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.

Law Offices of Lance Rogers and Lance Rogers; Law Offices of Joshua J. Hamlin and Joshua J. Hamlin, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General; Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

Howard Greenspan appeals from a judgment convicting him of marijuana cultivation and other offenses arising from his operation of a marijuana "grow" operation in a commercial building. He contends the police conducted an unlawful warrantless search of the building through the use of a thermal imaging device, and hence the trial court erred in denying his motion to suppress evidence thereafter seized by the police. We find no error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On February 22, 2012, the police executed a search warrant at a commercial building and seized numerous items related to defendant's marijuana grow operation. As we shall detail below, the probable cause showing for the search warrant was based in part on information derived from a warrantless thermal imaging scan of defendant's building conducted by a police officer during a search for a suspect in an unrelated armed robbery.

After being charged with various offenses and filing an unsuccessful motion to suppress the evidence seized by the police, defendant ultimately pled guilty to cultivation of marijuana, possession of marijuana for sale, and making space available for storing marijuana for sale. The court suspended imposition of sentence and placed defendant on five years of formal probation.

*The Thermal Imaging Scan of Defendant's Building*

Defendant filed a motion to suppress the evidence seized from his building based on his claim that the evidence was the fruit of an illegal, warrantless thermal imaging scan of the building. The record on appeal does not include the reporter's transcript of the

2

hearing on the suppression motion where the officer who conducted the thermal imaging scan testified. Accordingly, our summation of the facts concerning the thermal imaging scan is derived from the police officer's affidavit submitted in support of the application for a warrant to search defendant's building.

According to the search warrant affiant, at 1:55 a.m. on December 18, 2011, the police responded to a robbery involving a gun at 30th and Imperial Avenue in San Diego. The responding officers were unable to locate the robbery suspect, and police pilot Kevin Means arrived in a helicopter to help in the search. Officer Means used a Forward Looking Infrared (FLIR) thermal imaging device to assist in the attempt to locate the suspect.

While searching for the suspect with the thermal imaging device, Officer Means observed a structure at 2953 Imperial Avenue (later identified as defendant's building) which was emitting "high amounts of heat from a roof top vent and had a dangerously overloaded power line leading to an overloaded transformer on a power pole located in the south alley." Based on his training and experience, Officer Means believed the "heat anomalies of this structure were consistent with heat anomalies commonly associated with indoor marijuana grows." The FLIR scan of the building was videotape recorded. The building was a single story commercial building, with an iron fence enclosing the front and rear of the building. The address was depicted on a placard attached to the front fence, and there were no visible markings showing a business name.

Regarding the nature of FLIR thermal imaging, Officer Boyce explained: "A FLIR thermal imaging device is a passive, non-intrusive system which detects differences

3

in surface temperature of an object being observed. This system does not send any beams or rays into an area nor does it enter any structure area. The system only detects the differences in the surface temperature of an object. The use of this device in the early morning or evening, without solar loading (sunshine), highlights man-made heat sources as a white color and cooler temperatures by shades of gray. Similar devices such as this have been used with other applications such as locating missing persons in a forest, identifying inefficient building insulation, detecting hot, overloaded power lines, and detecting forest fire lines through smoke."

After obtaining the information concerning defendant's building via the thermal imaging scan, the police investigated the matter for several weeks. They observed a car registered to defendant parked at the building on several occasions, including during daylight hours and late at night. City records showed there was no business tax or corporation information filed for the building's address. San Diego Gas & Electric Company (SDG&E) records showed defendant was the account holder for the building, and he also had an SDG&E account at a residence at a different location. Defendant's January 2012 electric bill at the Imperial Avenue building was $1,837.08, which reflected an "extremely high" energy usage compared to two other commercial businesses on the same block that were open six to seven days per week. Officer Boyce explained indoor marijuana operations use high intensity lights to create artificial sunlight, and these lights use large quantities of electricity and can create tremendous amounts of heat. The lights are often inside closed fixtures connected to ducts which vent the heated air out of the marijuana grow rooms by forced air.

4

*Trial Court's Denial of Suppression Motion*

In support of his suppression motion, defendant argued the officer's use of the thermal imaging device constituted an unlawful warrantless search of his building. In opposition, the prosecution contended there was no constitutional violation because the police were legitimately using the thermal imaging device under exigent circumstances to search for the robbery suspect, and they could properly seize any evidence seen in plain view during the course of their legitimate emergency activities.

When denying the suppression motion, the trial court found that defendant had a reasonable expectation of privacy in his commercial building, but that Officer Means's observation of the building did not constitute a search, or alternatively, it was a reasonable search. The court found Officer Means was lawfully entitled to be in the location from which he made the original observation, and his observation of the heat anomaly was "inadvertent and fleeting" and a " 'plain view' " observation. Further, the heat anomaly that he observed was "immediately apparent" as an indoor marijuana grow operation; he did not conduct an exploratory search; and his view was not tainted by any illegality.

## DISCUSSION

### I. *Search and Seizure Principles*

#### A. *Warrant Requirement for Constitutionally Protected Areas*

The Fourth Amendment protects against unreasonable searches and seizures, and generally requires that a warrant be issued before a search or seizure. (*Texas v. Brown* (1983) 460 U.S. 730, 735 (*Brown*).) In *Kyllo v. United States* (2001) 533 U.S. 27 (*Kyllo*),

5

the court held the use of a thermal imaging device to detect relative amounts of heat within a home constituted a search for Fourth Amendment purposes, and hence the warrantless use of the device to investigate a suspected marijuana grow operation was constitutionally impermissible. (*Id*. at pp. 29, 34-35.) The court reasoned that privacy expectations are heightened for a home; the police had engaged in more than naked-eye surveillance of the home; and the heat information obtained by the police concerned matters about the inside of the home even though the imaging did not actually penetrate the home. (*Id*. at pp. 33-40.) The court concluded that "obtaining by sense-enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical 'intrusion into a constitutionally protected area' [citation] constitutes a search . . . ." (*Id*. at p. 34.) The *Kyllo* court distinguished its holding in *Dow Chem. Co. v. United States* (1986) 476 U.S. 227 (*Dow Chemical*), which found the use of advanced aerial photography to obtain images of the open areas of a commercial property did not constitute a search. (*Id.* at p. 239.) *Kyllo* explained, "*Dow Chemical* . . . involved enhanced aerial photography of an industrial complex, which does not share the Fourth Amendment sanctity of the home." (*Kyllo, supra*, at p. 37.)

Although the home is entitled to a heightened level of privacy protection, "a business establishment or an industrial or commercial facility [also] enjoys certain protections under the Fourth Amendment." (*Dow Chemical, supra*, 476 U.S. at p. 235.) In *Dow Chemical*, the court stated there was a reasonable expectation of privacy within the *interior* of the business's covered buildings, even though it found the outdoor areas of the business were not shielded from advanced aerial surveillance. (*Id*. at p. 236; *People*

6

*v. Lee* (1986) 186 Cal.App.3d 743, 746 [interior office not open to general public afforded privacy protection from warrantless intrusion].)

### B. *Warrantless Seizures Permitted Under Plain View Doctrine*

Notwithstanding the general constitutional prohibition against warrantless searches of constitutionally protected areas, the courts have recognized "a wide range of diverse situations" that provide for "flexible, common-sense exceptions" to the warrant requirement, including the " 'plain view' doctrine." (*Brown, supra*, 460 U.S. at p. 735.) The plain view doctrine can apply in two situations, (1) when an officer observes an object in a public place, or (2) when an officer observes an object that is " ' "situated on private premises to which access is not otherwise available for the seizing officer." ' " (*Id*. at p. 738.) When the object is in a *public place*, the " 'seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.' " (*Ibid*.) When the object is in a *private place*, the officer may seize the property in open view if the officer has lawfully made the initial intrusion into the private place or is otherwise properly in a position from which he or she can view the particular area. (*Id*. at pp. 737-738.)

The application of the plain view doctrine to private places "provides grounds for seizure of an item when an officer's access to an object has *some prior justification* under the Fourth Amendment. 'Plain view' is . . . simply . . . an extension of whatever the prior justification for an officer's 'access to an object' may be." (*Brown, supra*, 460 U.S. at pp. 738-739, italics added, fn. omitted.) The rule "reflects an application of the Fourth

7

Amendment's central requirement of reasonableness to the law governing seizures of property." (*Id.* at p. 739.) The courts reason that "once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy." (*Illinois v. Andreas* (1983) 463 U.S. 765, 771.) Considering the nature of the owner's interests and the legitimacy of the police activity during plain view observations, the courts have concluded there is no reason to impose a warrant requirement upon the police. (*Brown, supra*, 460 U.S. at p. 739.)

As explained in *Arizona v. Hicks* (1987) 480 U.S. 321, "the practical justification of [the] extension [of the plain view doctrine to private places] is the desirability of sparing police, whose viewing of the object in the course of a lawful search is as legitimate as it would have been in a public place, the inconvenience and the risk—to themselves or to preservation of the evidence—of going to obtain a warrant." (*Id.* at p. 327; *Minnesota v. Dickerson* (1993) 508 U.S. 366, 375 [plain view doctrine "justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment"]; *Washington v. Chrisman* (1982) 455 U.S. 1, 9 ["when a police officer, for unrelated but entirely legitimate reasons, obtains lawful access to an individual's area of privacy[,] [t]he Fourth Amendment does not prohibit seizure of evidence of criminal conduct found in these circumstances"].)

Thus, "*if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately*." (*Brown, supra*, 460

8

U.S. at p. 739, italics added.)  The seizure of the item in plain view does not require the existence of exigent circumstances because it is the *prior justification* for the police presence in the private area that permits the seizure.  (See *Commonwealth v. Person* (Super. Ct. Pa. 1989) 560 A.2d 761, 767-768 [plain view permitted seizure even though "there was plenty of time to obtain a search warrant"]; *State v. Lair* (Wash. 1981) 630 P.2d 427, 432-433; *Brown, supra*, 460 U.S. at pp. 738-739.)  Further, the rule applies even when the discovery of the incriminating evidence occurs while the police are lawfully engaging in activities *unrelated to the accused*.  (*Horton v. California* (1990) 496 U.S. 128, 135-136 (*Horton*).)  " 'The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or *some other legitimate reason for being present unconnected with a search directed against the accused*—and permits the warrantless seizure.' "  (*Ibid*., italics added.)

In addition to the requirement of a lawful initial intrusion, the plain view doctrine requires that it "be 'immediately apparent' to the police that the items they observe may be evidence of a crime . . . ."  (*Brown, supra*, 460 U.S. at p. 737.)  The "immediately apparent" requirement equates with probable cause; i.e., the officer may seize the items if "the facts available to the officer would 'warrant a man of reasonable caution in the belief [citation] that certain items may be . . . useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.  A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required."  (*Id.* at p. 742.)

9

However, under the plain view doctrine the police may not conduct a *further search* to determine if probable cause exists; rather, to justify the seizure, the probable cause must exist at the time of the observation of the item. (*Minnesota v. Dickerson, supra*, 508 U.S. at p. 375 [if "the police lack probable cause to believe that an object in plain view is [incriminatory] without conducting some further search of the object . . . the plain-view doctrine cannot justify its seizure"]; *Arizona v. Hicks, supra*, 480 U.S. at p. 328 [plain view doctrine may not be used " 'to extend a general exploratory search from one object to another until something incriminating at last emerges' "].) Also, the police may not seize the item even if it is in plain view unless they have "a lawful right of access to the object itself"; i.e., they must be able to seize the property from the position where they are legitimately located, and absent exigent circumstances they may not *enter* premises where they are not authorized to be to accomplish a warrantless seizure. (*Horton, supra*, 496 U.S. at p. 137 & fn. 7; *State v. Betts* (Tex.Crim.App. 2013) 397 S.W.3d 198, 206-207 [absent exigent circumstances, police could not enter backyard even though they saw evidence of crime in plain view from street]; *United States v. Davis* (4th Cir. 2012) 690 F.3d 226, 233-234.) On the other hand, assuming the police have probable cause to believe the item is associated with criminal activity, the authority to seize the item includes the authority to further *inspect* the item at the time of seizure. (*Arizona v. Hicks, supra*, 480 U.S. at p. 326 [if probable cause exists for seizure, object may be moved for closer examination].)

10

C. *Standard on Appeal*

When reviewing the denial of a suppression motion on appeal, we defer to the trial court's express and implied findings if they are supported by substantial evidence, and, on the facts so found, exercise our independent judgment in determining the constitutionality of the search or seizure. (*People v. Tully* (2012) 54 Cal.4th 952, 979.)

II. *Analysis*

Applying these general principles here, defendant had a reasonable expectation of privacy in the interior of his business premises that were not open to the public. (*Dow Chemical, supra*, 476 U.S. at p. 235; *People v. Lee, supra*, 186 Cal.App.3d at p. 746.) Further, we will assume for purposes of our analysis that, under the reasoning of *Kyllo, supra*, 533 U.S. 27, the thermal imaging scan constituted a search within the meaning of the Fourth Amendment even though the building was commercial rather than residential.

However, unlike the circumstances in *Kyllo*, at the time of the thermal imaging scan the police here were *not* conducting a warrantless search of defendant's building based on their suspicion that he had a marijuana grow operation inside the building. Rather, at the time of the thermal imaging scan of defendant's building, the police were looking for an unrelated armed robbery suspect. These circumstances triggered application of the plain view doctrine.

The record shows the police were legitimately engaged in a search for the armed robbery perpetrator, and it was reasonable for them to use the thermal imaging device to search for the perpetrator in the outdoor areas of the neighborhood where the robbery occurred. The closeness of the location of the robbery (30th and Imperial Avenue) and

11

defendant's building (2900 block of Imperial Avenue) reflects that the thermal imaging scan was confined to an area where the robbery suspect could have fled. During the course of this legitimate search—which occurred in the early morning hours after the 1:55 a.m. robbery report—the officer was using the thermal imaging device when he noticed a large amount of heat emanating from the rooftop vent and electrical wires of defendant's building and from the attached electrical transformer located on the power pole in the alley. Based on his training and experience, the officer knew these observations were consistent with an indoor marijuana growing operation because such operations typically use high intensity lights, generate a lot of heat, use vents to discharge the heat, and consume large amounts of electricity, and this usage would occur even in the early morning hours when the commercial building was likely unoccupied. The officer's observations and specialized knowledge provided him probable cause to believe the heat images were evidence of criminal activity.

Based on this probable cause, the officer was entitled to "seize" the heat images and use them in support of the application for a warrant to search defendant's building. The officer was engaging in a lawful search for a suspect using a lawful means; during this search he observed the suspicious item (the distinctive heat differentials associated with the vent, electrical wires, and transformer) from a place that he was entitled to be; it was immediately apparent to the officer that the heat might be useful evidence of a crime; the probable cause existed without the need to conduct any further search beyond the already-justified thermal imaging scan; and the officer was lawfully in a position to seize the information without the need to enter onto the building's premises. These

12

circumstances satisfied the requirements of the plain view doctrine and authorized the officer to immediately seize the evidence without obtaining a warrant and returning to the building to again conduct a thermal imaging scan.

To support his challenge to the court's denial of the suppression motion, defendant contends there was nothing to indicate the suspect would be inside his building and the police used the robbery suspect search as a pretext to conduct a warrantless search of his building. The trial court was not required to find that the facts showed a pretextual search. To the contrary, the trial court could reasonably conclude the police were generally searching the outdoor areas near the robbery scene for the suspect, and during this legitimate search they happened to obtain images from a building in close proximity to the robbery location.

Defendant posits the officer "positioned the FLIR scanner on [his] property and continued to observe the property in order to discover heat sources within the premises. . . . The use of FLIR was not a mistaken view of [his] property, but rather an intrusive invasion of the contents of the property." Contrary to defendant's claim, there is nothing in the record to suggest the officer aimed the thermal imaging device at defendant's building during a search that was divorced from the proper search for the robbery suspect. The robbery scene was within one block of defendant's building, and it was clearly reasonable for the thermal imaging scan to encompass this one block area while searching for the robbery suspect. Also, to the extent the officer may have

continued recording the thermal images at defendant's building once he observed the significant heat differentials, this was a reasonable means to accomplish the "seizure" of the evidence already supported by probable cause.

Exercising our independent judgment on the legality of the search and seizure, there was no Fourth Amendment violation given the applicability of the plain view doctrine. Accordingly, the trial court properly denied the suppression motion.

## DISPOSITION

The judgment is affirmed.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


NARES, J.